BLANK ROME, LLP
Attorneys for Defendants
SUNDERSONS, LTD
SIMRAN MEHER LTD.
CONTI-AGRO NIGERIA LTD.
VALECHHA HOLDINGS LIMITED
Thomas H. Belknap, Jr. (TB-3188)
The Chrysler Building
405 Lexington Ave.
New York, NY  10174-0208
tel: (212) 885-5000
fax: (212) 885-5001
tbelknap@blankrome.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JALAPA SHIPPING LIMITED,<br><br>  Plaintiff,<br><br> -against-<br><br>SUNDERSONS LTD., et al.,<br><br>  Defendants. | 07 Civ. 8715 (RJH) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
<u>OF MOTION TO VACATE ATTACHMENT</u>**

## PRELIMINARY STATEMENT

Defendants Sundersons, Ltd, Simran Meher Ltd., Conti-Agro Nigeria Ltd., and Valechha Holdings Limited submit this memorandum of law in support of their motion to vacate all orders of attachment issued as against them in this matter.

## FACTS

This action was commenced by plaintiff on October 9, 2007 against defendants Sundersons, Ltd., Milan Nigeria Ltd., Simran Meher Ltd. and Valechha Holdings Limited. In its Verified Complaint, plaintiff alleged at paragraph 7 that on or about November 13, 2007 a charter party agreement for the M/V LION PRINCESS was entered between plaintiff and defendant Sundersons and that on or about November 26, 2005 plaintiff issued 10 bills of lading in respect of cargo transported aboard the vessel. According to paragraph 11 of the complaint, "defendants" claimed against plaintiff for damage to the cargo at the first discharge port and "prevented" the Vessel from departing the discharge port by threatening to arrest the Vessel. Plaintiffs allege that the Vessel was "wrongfully detained" by defendants in Lagos and that, as a consequence, plaintiff was effectively coerced into a settlement. Plaintiff alleges that its resulting losses are $251,125.78.

Plaintiff alleges that the charter, whose terms were allegedly incorporated into the bills of lading, contained a London arbitration provision. By demand dated January 16, 2007, plaintiff commenced arbitration against defendants Milan Nigera and Sundersons and appointed an arbitrator. (Belknap Aff., Ex. A) Defendants Milan Nigera and Sundersons appointed their arbitrator on August 7, 2007. (Belknap Aff., Ex. B) None of the other defendants herein are even purported to be parties to the arbitration.

Plaintiff commenced the instant action, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Cases, seeking security in respect of its claims in the London arbitration. In addition to security on the principle claim, plaintiff seeks security for 3 years of anticipated interest at 6%, or $49,124.77, and anticipated costs of $100,000. In total, plaintiff seeks $400,250.55 in security. Plaintiff further alleges that the other defendants in this action are alter egos of Milan Nigeria such that their corporate veils should be pierced and they should be liable in respect of plaintiff's claims against Milan Nigeria.

Pursuant to plaintiff's *ex parte* application, this Court issued an order dated October 10, 2007 directing that process of maritime attachment and garnishment issue against property of all the defendants, in the amount of $400,250.55. On October 22, 2007, the Court issued an amended order for Process of Maritime Attachment.

On or about September 11, 2007, American Express Bank restrained certain funds pursuant to the attachment order herein which belonged to non-party Conti-Agro Nigeria Limited but which the originating bank had mistakenly identified as belonging to Milan Nigeria. By letter application dated November 19, 2007, Conti-Agro made a limited appearance in this matter seeking release of these funds. By order date January 8, 2008, following submissions by the parties and a hearing, this Court ordered that American Express release these funds.

On January 23, 2008, the undersigned counsel for defendants wrote to plaintiff's counsel by e-mail as follows:

> Dear Peter:
>
> My clients are planning to make a motion in this action to dismiss the "alter ego" causes of action on the ground that they are insufficiently pled. They are mindful that if they succeed the Court would probably grant you the opportunity to amend the plaintiff's

>complaint. Thus, in the hopes of avoiding this unnecessary step, I am letting you know of their intention now so you can make whatever amendments you consider appropriate, if any, before we make our motion.
>
>* * *
>
>Very truly yours-
>
>Tom Belknap

(Belknap Aff., Ex. C).

On February 8, 2008, plaintiff filed its Amended Verified Complaint adding Conti-Agro Nigeria Ltd as a defendant and make certain other amendments, including to the "alter ego" allegations. On March 11, 2008, plaintiff filed a Second Amended Complaint in which, *inter alia*, it amended the allegations contained in paragraph 8 relating to the applicable charterparty agreement. (Belknap Aff., Ex. D).

Specifically, plaintiff withdrew its earlier allegation that a charterparty existed between it and defendant Sundersons and instead alleged that the applicable charterparty was between it and non-party DEOL Marine Services. Accordingly, Plaintiff now alleges no direct relationship between itself and any of the defendants Sundersons, Simran, Conti-Agro or Valechha; instead, plaintiff's sole alleged grounds for relief against those parties is that they are ostensibly alter egos of Milan Nigeria.

As to the "alter ego" allegations, plaintiff makes the following assertions in its Second Amended Complaint:

>19. On information and belief, the Defendants are all affiliated entities operating under the name "Milan Group" and, at all relevant times held, and continue to hold, themselves out to the world as being "associated" members of the "Milan Group," an international trading group based in Lagos, Nigeria.

20. On information and belief, all the members of the "Milan Group," including the Defendants herein, share officers, directors and personnel, as well as common offices and addresses in, among other places, Lagos, Nigeria.

21. Upon information and belief, the said member of the Milan Group, including Defendants herein, transact business as the "Milan Group," and not individually, and said members are jointly and severally liable for the obligations of each other member of the Milan Group.

22. On information and belief, Milan Nigeria makes payments on behalf of the other Defendants. For example, in September 2007, a bank transfer was originated by Milan Nigeria for Conti-Agro's charter of the M/V HONG PROSPERITY even though Milan Nigeria claims it had no interest in the charter.

23. On information and belief, all the Defendants are controlled and operated by Milan Nigeria from the identical address in Lagos, Nigeria.

24. On information and belief, all the Defendants are controlled and operated by the Valeccha family. In addition, the "legal representative/business owner" of Conti-Agro is Ramesh Valechha, who communicates with third parties in commercial matters using the email account of the "Milan Group."

25. Upon information and belief, defendant Milan Nigeria exercises such complete domination and control over defendants Sundersons, Conti-Agro, Simran Meher, and Valechha, and/or disregarded Sunderson's, Conti-Agro's, Simran Meher's, and Valechha's corporate form, and/or conducted the business and operations of Sundersons, Conti-Agro, Simran Meher, and Valechha, as if the same were Milan Nigeria's own, that adherence to the fiction of the separate existence of the Defendants as entities distinct from one another and/or the separate existence of defendants Sundersons, Milan Nigeria, Conti-Agro, Simran Meher, and Valechha as distinct from each other, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

26.   Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and amongst Defendants, such that any individuality and separateness between said Defendants have ceased, and Defendants, and each of them, are the alter egos of each other.

27.   Upon information and belief, the said members of the Milan Group, including Defendants herein, are guarantors of the obligations of each individual member of the Milan Group.

28.   On information and belief, defendants Conti-Agro and Milan Nigeria hold themselves out publicly as associated companies with virtually identical product lines, including raw cashew nuts.

On or about April 8, 2008, plaintiff sent a notice that HSBC bank had restrained $129,517.51 apparently destined for "Sundersons" as beneficiary. Defendant Sundersons has investigated this attachment and, based on presently known information, believes these funds belong to some unknown third party. Accordingly, the details of this attachment are not pertinent for the present application; however, Sundersons reserves its right to take further action to oppose this attachment in the event further investigation reveals that it does, in fact, have an interest in these funds.

## ARGUMENT

### A.   The Basic Rule

In <u>Aqua Stoli v. Gardner Smith Pty Ltd.</u>, 384 F. Supp. 2d 726 (2d Cir. 2005), the Second Circuit Court of Appeals clarified the circumstances under which a Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe *vacatur* is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Id. at 445 (footnotes omitted).

It is well established that the plaintiff bears the legal burden of showing why the order of attachment should not be vacated. Rule E(4)(f), for instance, provides as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the <u>plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules</u>. [Emphasis added.]

See also Dolco Investments, Ltd. v. Moonriver Development, Ltd., 2007 U.S. Dist. LEXIS 31101, *7 (S.D.N.Y. 2007). At a Rule E(4)(f) hearing, a defendant may attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. R. E(4)(f).

### B. Plaintiff's Burden Of Pleading Under Rule B

While the Second Circuit has not addressed the specific question of what a plaintiff must show to make out a "*prima facie*" admiralty claim, some district courts have held that a plaintiff

must make an affirmative showing in the Rule E(4)(f) hearing that there exist "reasonable grounds" or "probable cause" for the attachment. See e.g., Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006). Under this standard, "although a minimal *prima facie* showing is sufficient to justify an attachment under Rule B, under Rule E(4)(f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." Id. at 325. See also Wajilam Exports (Singapore) Pte, Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006)(concluding that Aqua Stoli did "not … discuss whether its holding had any impact on the 'reasonable grounds' inquiry as it relates to the 'valid *prima facie* claim' analysis.").

A number of other decisions have concluded, on the other hand, that this "reasonable grounds" inquiry is inconsistent with the Second Circuit's holding in Aqua Stoli that a plaintiff need only make a *prima facie* showing to sustain an attachment under Rule B. See Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006)(Although Aqua Stoli does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment," – including a "valid *prima facie* admiralty claim against the defendant" – implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry."); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y. 2007)(Noting that the analysis in Tide Line "is consistent with the limited inquiry contemplated by Aqua Stoli and comports with a basic definition of the term "*prima facie*" and holding that the court "will look only to Plaintiff's pleadings, and not to any evidence submitted by the parties, to determine whether

Plaintiff has made a legally sufficient claim for piercing the corporate veil."). See also Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007); Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007); OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007).

Not all recent decisions have accepted, however, that Aqua Stoli mandates merely a *prima facie* review of veil piercing claims in a Rule B complaint. In a decision issued from the bench on March 4, 2008, for instance, Judge Crotty observed as follows:

> With regard to piercing the corporate veil, the allegations set forth in count 2 of the complaint, the amended verified complaint, paragraphs 32 through 60, I have read the Aqua Stoli decision, and Aqua Stoli deals with a situation of what is appropriate for pleadings purposes under Rule B.
>
> Judge Walker had to confront a tendency in the Southern District of New York to finds a needs plus, in other words, that Rule B didn't contain all of the requirements for a maritime attachment and the district court judges could balance the needs of the parties, whether financial security is really needed and whether the inconvenience of the attachment outweighed the effectiveness of the attachment in terms of providing security to the attaching party. He said nothing at all about piercing the corporate veil, and so I think that question has not been addressed.

Far Eastern Shipping Co. PLC v. Sea Transport Contractors Limited, 07 cv 9887 (PAC), Transcript of March 4, 2008 hearing at p. 35-36 (See Belknap Aff., Ex. E)(emphasis added).

In any event, it is clear that in a veil piercing claim, the plaintiff's complaint must at a minimum sufficiently plead facts which, if proven true, would justify piercing the corporate veil of a defendant. Indeed, pursuant to the Federal Rules of Civil Procedure, the pleading standards are stricter in maritime attachment and arrest cases than the "notice" pleading standard ordinarily

employed in civil actions pursuant to Fed. R. Civ. P. 8(a).  Supplemental Admiralty Rule E(2)(a) specifically requires that a Rule B complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  As one court explained, "[t]his heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings."  Dolco Investments, Ltd. v. Moonriver Dev. Ltd., 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007)(quoting P.R. Ports Auth. v. Barge KATY-B, 427 F.3d 93, 105 (1st Cir. 2005)).

### C. Pleading A Corporate Veil Piercing Claim

It is well established in this Circuit that under the federal maritime law, a corporate veil may only be pierced where it is shown that the corporation was used by another person or entity to "perpetuate a fraud" or where it was "so dominated and its corporate form so dominated such that it primarily transacted the other entity's or individual's business."  See, e.g., Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *33 (S.D.N.Y. 2006)(quoting Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980)).  Plaintiff's only reference to fraud is in passing, in paragraph 25 of the Second Amended Complaint, and there can be no dispute that this reference falls well short of the "particularity" pleading requirement of Fed. R. Civ. P. 9(b).  Thus, plaintiff's only chance of success hinges on the second prong, i.e. alter ego.

The Second Circuit has identified a number of factors that are relevant in evaluating alter ego claims:  (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common

office space, address and telephone numbers of corporate entities; (6) the degree of business discretion displayed by allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guaranty of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.  See MAG Portfolio Consultant, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58, 63 (2d Cir. 2001); Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd., 774 F. Supp. 840, 844 (S.D.N.Y. 1991)(applying these factors in the admiralty context); Tide Line, 2006 U.S. Dist. LEXIS 95870, * 35 (applying these factors in Rule B context); Wajilam, 475 F. Supp. 2d 275, 284 (same).

Veil piercing is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders.  See David v. Glemby Co., 717 F. Supp. 162, 166 (S.D.N.Y. 1986); Billy v. Consolidated Machine Tool Corp., 51 N.Y.2d 152, 163, 412 N.E.2d 934, 432 N.Y.S.2d 879 (N.Y. 1980); Dolco Investments, 2007 U.S. Dist. LEXIS * 23 & 24 (Judge Sweet noted:  "Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, . . .".).  Consequently, the controlling precedent in this Circuit is that there is a "'presumption of separateness' afforded to related corporations," Williams v. McAllister Bros., Inc., 534 F.2d 19, 22 (2d Cir. 1976)(citations omitted), which has correctly led to a "reluct[ance] to disregard the separate existence of related corporations by piercing the corporate veil" on the part of the district courts.  Kashfi v. Philbro-Salomon Inc., 628 F. Supp. 727, 732-33 (S.D.N.Y. 1986).

This controlling precedent applies to maritime claims.  In American Renaissance Line, Inc. v. Saxis Steamship Co., the Court of Appeals, citing several cases, held:  "absent findings of

fraud or bad faith, a corporation, such as Renaissance, is entitled to a presumption of separateness from a sister corporation, such as Multifacs, even if both are owned and controlled by the same individuals." 502 F.2d 674, 677 (2nd Cir. 1974). Thus, the party seeking to pierce the corporate veil bears a "heavy burden." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 703 N.E.2d 749, 680 N.Y.S.2d 891 (N.Y. 1998); see also, Cargill Investors Services, Inc. v. Cooperstein, 587 F. Supp. 13, 15 (S.D.N.Y. 1984); and, Janki Bai Sahu v. Union Carbide Corp., 2006 U.S. Dist. LEXIS 84475 * 15 (S.D.N.Y. Nov. 20, 2006)(To pierce the corporate veil, a "high level" of domination must be proven).

While some recent decisions have taken a fairly permissive view towards the pleading requirements for a veil piercing claim in a Rule B complaint, see e.g., World Reach Shipping, Ltd. v. Indus. Carriers Inc., 2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. 2006); Wajilam Exports (Singapore) Pte., Ltd. v. ATL Shipping Limited, 475 F. Supp. 2d 275 (S.D.N.Y. 2006), other recent decisions have taken a harder line in requiring adequate particularity in the pleadings before an attachment in support of a veil piercing claim will be upheld. In Dolco Investments, 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007), for instance, Judge Sweet vacated an attachment as against alleged alter ego defendants, finding that the plaintiff had failed to meet its pleading burden by failing to include any factual allegations to support the allegation that the "main" defendant exercised complete dominion over the putative alter ego. In particular, the Court found that, other than generalized conclusory allegations of domination, the complaint's allegation that the main defendant paid the alleged alter ego's debts "from time to time" was insufficiently vague to support the attachment.

In Far Eastern Shipping Co. PLC v. Sea Transport Contractors Limited, 07 cv 9887 (PAC), Transcript of March 4, 2008 hearing at p. 36 (See Belknap Aff., Ex. E), Judge Crotty vacated an attachment against alleged alter egos of the "main" defendant where the complaint alleged that the alleged alter ego had made at least one vessel hire payment on behalf of the defendant (and contained specific details about that payment), where there was substantial overlap of officers, directors and shareholders, and where the admitted principal of all the defendants had stated that he was the "controlling mind" of the main defendant. In doing so, the Court noted that although the pleadings suggested a "close working relationship" among the defendants, they were insufficient to support a Rule B attachment of the alleged alter egos' funds. A copy of the Amended Complaint in that matter, which contains substantially more detailed allegations than those in plaintiff's Second Amended Complaint in the present case, is attached as Exhibit F to the Belknap Affidavit.

In Tide Line, Judge Wood determined that the complaint as filed failed to "meet the more particularized pleading standard set forth in Supplemental Rule E(2)(a)—nor even, arguably, the more liberal standard of Rule 8(a)," where it merely alleged in a conclusory fashion that one entity was a "paying agent, or arranges for other non-parties to satisfy the debts and obligations of another entity." Tide Line at *42-43 (citing EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005)(stating that "conclusory" allegations regarding veil-piercing "fail to satisfy even the more lenient Rule 8(a) pleading requirement.").

# POINT I

## PLAINTIFF HAS FAILED TO MEET ITS PLEADING BURDEN WITH RESPECT TO ITS ALTER EGO ALLEGATIONS

Plaintiff's claims in the Second Amended Complaint against defendants Sundersons, Simran, Conti-Agro and Valechha derive solely from their alleged "alter ego" status vis-à-vis Milan Nigeria, and not from any allegation of fault or wrong-doing on their own behalves. Indeed, while plaintiff originally alleged that Sundersons had entered a charterparty with plaintiff, that allegation was withdrawn in the Second Amended Complaint. As such, absent plaintiff's alter ego allegations there is no possible ground for recovery against any of the defendants, Sundersons, Simran, Conti-Agro or Valechha.

Plaintiff's alter ego allegations are inadequate as a matter of law and are insufficient to support a Rule B attachment. Indeed, the Second Amended Complaint does nothing more than make a generalized and rote recital of the Second Circuit's alter ego "factors," without any particularized allegations which would support such a finding. As the foregoing discussion makes clear, however, such vague generalities are insufficient to satisfy the pleading requirements of Supplemental Rule E(2)(a) or, indeed, even Rule 8(a). It is not enough, for instance, to merely allege that the defendants are "affiliates" or "associated members of the Milan Group," (2d Am. Compl. ¶ 19); or that they share common officers, directors and personnel, (2d Am. Compl. ¶ 20); or that they operate from the same address (2d Am Compl. ¶ 23); or that they share a legal representative (2d Am. Compl. ¶ 24); or that they are associated companies with "virtually identical product lines." (2d Am. Compl. ¶ 28). Indeed, this describes nearly every business group on the face of the planet, and the various subsidiaries and affiliates

of Berkshire Hathaway, for instance, certainly would not be denied their corporate separateness merely because any (or even all) of the above facts may be true about them.

In ¶ 21 plaintiff alleges that defendants transact business as "the Milan Group, and not individually" and that they are "jointly and severally liable for the obligations of each other," but plaintiff pleads no facts to support these blanket assertions about how the defendants conduct their business nor to support the legal "conclusion" that they are thereby jointly and severally liable. Simply put, this is an empty and meaningless allegation.

The same goes equally for the allegations in ¶ 25, in which plaintiff contends that defendant Milan Nigeria exercised "such complete domination and control" over the other defendants that veil piercing is called for. This is not a factual allegation, it is a legal assertion, and it is supported by no factual allegations whatsoever. Paragraphs 26-27, which claim that "there existed a unity of interest and ownership" and that defendants are "guarantors of the obligations of each individual member of the Milan Group" are fatally flawed for the exact same reason. Plaintiff alleges no factual underpinning to support these legal assertions, but instead relies merely on rote and empty recitals.

The only allegation in plaintiff's entire Second Amended Complaint which even approaches the level of specificity that should be required under Supplemental Rule E(2)(a) is found in ¶ 22, in which plaintiff alleges that "a bank transfer was originated by Milan Nigeria for Conti-Agro's charter of the M/V HONG PROSPERITY even though Milan Nigeria claims it had no interest in the charter." This allegation, the Court will recall, stems from the incident which was the subject of then non-party Conti-Agro's motion to vacate plaintiff's attachment of funds at American Express on the ground that the bank had mistakenly identified the funds as

belonging to Milan Nigeria when they in fact belonged to Conti-Agro. The Court accepted the evidence introduced by Conti-Agro, which included a declaration by bank officers of the originating bank as well as a copy of the invoice and charter party in respect of which Conti-Agro was making payment, and granted the motion to vacate the attachment. (See Docket No. 11). In the circumstances, this is a particularly dubious "fact" for plaintiff to rely upon in support of a claim of alter ego.

In any event, the allegations in ¶ 22 have <u>no</u> relevance whatsoever to plaintiff's allegations against defendants Sundersons, Simran and Valechha, and plaintiff makes no specific allegations of any kind against any of those parties. This fact clearly illustrates the weakness of plaintiff's Second Amended Complaint.

There is a good reason why the pleading standards are heightened for Rule B cases. By its very nature, a Rule B action seeks the extraordinary pre-judgment remedy of restraining a defendant's assets as security <u>before</u> the plaintiff has actually obtained a judgment on its claim. While there may be good policy reasons for allowing a plaintiff to do so in a maritime case, the fact remains that the remedy is merely provisional and is ultimately contingent upon the plaintiff's eventually succeeding on the merits of the claim (and additionally, here, is contingent upon plaintiff's having a London arbitration recognized and enforced by this Court). The heightened pleading requirements of Supplemental Rule E(2)(a) are virtually the only protection a defendant has against abuse of process by an over-reaching plaintiff.

Where a party seeks to utilize Rule B to obtain pre-judgment security against a third-party which it alleges to be an alter ego of the "main" defendant, moreover, then the justification for the heightened pleading requirements is even stronger. In such case, the claim is doubly

contingent: first, upon the plaintiff's recovering against the main defendant on its claim and, second, on its prevailing on the merits of its claim that the other defendants are alter egos of the "main" defendant and should be liable on the judgment.

The application for an order of attachment is made *ex parte*, and so a Court has only one tool by which to assess the appropriateness in a given case of granting the extraordinary remedy of pre-judgment attachment, and that is the complaint. If a plaintiff is to be permitted to obtain a pre-judgment attachment of the property of a party against whom it does not even have a direct claim on the basis of a few rote and perfunctory pleadings, then it becomes easy—indeed, far too easy—for a plaintiff to make a few boilerplate allegations and thereby wreak havoc on the businesses of any number of parties who may happen to be associated in one way or the other with the defendant. Such permissiveness breeds abuse, and the present case is a clear example of the consequences.

For all of the paragraphs in plaintiff's complaint which purport to pertain to the alter ego defendants, plaintiff alleges precisely <u>nothing</u> of any material substance to support the alter ego allegations. This is clearly not the kind of pleading envisioned by Supplemental Rule E(2)(a) and, defendants submit, is inadequate under even the most permissive of pleading standards. Accordingly, the order of attachment in this matter should be vacated as to Sundersons, Simran, Conti-Agro and Valechha.

## POINT II

### PLAINTIFF SHOULD NOT BE GRANTED FURTHER LEAVE TO AMEND ITS COMPLAINT

Plaintiff's counsel was given due notice by e-mail dated January 23, 2008 that defendants considered that the Complaint was inadequately pled as respects the alter ego allegations. (Belknap Aff., Ex. C). Presumably in response to defendants' notice, plaintiff filed its Amended Complaint and, thereafter, its Second Amended Complaint by which it, *inter alia*, purported to supplement its pleadings on this issue. It should be clear that if plaintiff had any further factual bases to support its allegations, they would have been included in its second amended complaint. Plaintiff has had a fair opportunity to plead its case and should not be give unlimited opportunities to try and try again. Accordingly, plaintiff's claims against these defendants should be dismissed and plaintiff should not be permitted to continue to harass the defendants with repeated efforts to clear Rule E(2)(a)'s pleading hurdle.

In the alternative, in the event the Court is inclined to allow plaintiff to make further attempts to amend its complaint, defendants respectfully submit that this Court should apply particularly strict scrutiny to any subsequent request by the plaintiff for a further order of attachment against the "alter ego" defendants and should only grant such an application after a hearing, on prior notice to the defendants, as to the sufficiency of the pleadings. Such an order is appropriate in the circumstances to protect defendants from undue harassment and prejudice.

## **CONCLUSION**

For the foregoing reasons, defendants Sundersons, Simran, Conti-Agro and Valechha respectfully submit that their motion to vacate the order of attachment as against them should be GRANTED in full and that they should be granted such other and further relief as the Court may deem just and equitable.

Dated:   New York, New York
             April 24, 2008

                                                       BLANK ROME LLP
                                                       Attorneys for Defendants
                                                       SUNDERSONS, LTD
                                                       SIMRAN MEHER LTD.
                                                       CONTI-AGRO NIGERIA LTD.
                                                       VALECHHA HOLDINGS LIMITED
                                                       By _____/s/_____
                                                         Thomas H. Belknap, Jr. (TB-3188)
                                                         The Chrysler Building
                                                         405 Lexington Avenue
                                                         New York, NY  10174-0208
                                                         Tel.:  (212) 885-5000
                                                         Fax:  (212) 885-5001
                                                         tbelknap@blankrome.com