UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JALAPA SHIPPING LIMITED,

                Plaintiffs,

   -against-

SUNDERSONS LTD., MILAN NIGERIA LTD.,
SIMRAN MEHER LTD., CONTI-AGRO
NIGERIA LTD. and VALECHHA HOLDINGS
LIMITED,

                Defendants.
------------------------------------------------------------X

07 Civ 8715 (RJH)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE ATTACHMENT

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
JALAPA SHIPPING LIMITED
355 Lexington Avenue
New York, New York, 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

Of Counsel:
Peter Skoufalos

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ........................................................................................................ iii

Preliminary Statement ..................................................................................................... 1

Procedural Background ................................................................................................... 1

Factual Background ........................................................................................................ 2

Argument ........................................................................................................................ 4

Point I – Defendants Lack Standing to Challenge the Attachment
Because They Do Not Claim an Interest in the Attached Funds ..................................... 4

Point II – The Second Complaint Alleges a Prima Facie Alter Ego
Relationship and Thus Meets the *Aqua Stoli* Pleading Standard .................................... 5

    A. The Plaintiff's Burden ............................................................................................. 5

    B. Piercing the Corporate Veil ..................................................................................... 7

    C. Plaintiff Pleads a Prima Facie Claim for Alter Ego Liability ................................. 8

Point III – Plaintiff is Entitled to Discovery on the Alter Ego Issue ............................. 11

Conclusion .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
   460 F.3d 434 (2d Cir. 2006)..................................................................................5, 6

*Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd.*,
   2007 U.S. Dist. LEXIS 81137 (S.D.N.Y. Oct. 30, 2007) ..................................................6

*Dolco Investments, Ltd. v. Moonriver Dev., Ltd.*,
   2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007).................................................6

*Hawknet Ltd. v. Overseas Shipping Agencies*,
   2008 U.S. Dist. LEXIS 35542 (S.D.N.Y. Apr. 29, 2008)....................................6, 7, 8, 9

*Int'l Marine Consultants v. Karavias*,
   1985 U.S. Dist. LEXIS 19272 (S.D.N.Y. June 3, 1985)..................................................11

*Japan Line Ltd. v. Wilco Oil Ltd.*,
   424 F. Supp. 1092 (D. Conn. 1976)................................................................................11

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*,
   268 F.3d 58 (2d Cir. 2001)................................................................................................8

*Maryland Tuna Corp. v. M/S BENARES*,
   429 F.2d 307 (2d Cir. 1970)............................................................................................11

*Padre Shipping, Inc. v. Yong He Shipping*,
   2008 U.S. Dist. LEXIS 34428 (S.D.N.Y. Apr. 25, 2008).................................................6

*ProShipLine Inc. v. Aspen Infrastructures Ltd.*,
   533 F. Supp. 2d 422 (S.D.N.Y. 2008)..............................................................................6

*Rolls Royce Ind. Power (India) v. M.V. FRATZIS*,
   1966 AMC 390 (S.D.N.Y. 1995)....................................................................................11

*Sea Terminals, Inc. v. Independent Container Line, Ltd.*,
   1989 WL 222632 (S.D.N.Y. 1989).................................................................................11

*SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*,
   2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007)...............................................10

*T&O Shipping, Ltd. v. Source Link Co., Ltd.*,
   2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. Dec. 6, 2006) ................................................11

*Tide Line, Inc. v. Eastrade Commodities, Inc.*,
  2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 5, 2006) .............................................. 5, 6, 7

*Tide Line, Inc. v. Eastrade Commodities, Inc.*,
  2006 U.S. Dist. LEXIS 60770 (S.D.N.Y. Aug. 25, 2006) ...................................................... 7

*Ulisses Shipping Corp. v. FAL Shipping Co.*,
  415 F. Supp. 2d 318 (S.D.N.Y. 2006) ...................................................................................... 5

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*,
  475 F. Supp. 2d 275 (S.D.N.Y. 2006) ............................................................................ 7, 8, 11

*Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*,
  519 F. Supp. 2d 399 (S.D.N.Y. 2007) .................................................................................... 10

*World Reach Shipping Ltd. v. Industrial Carriers Inc.*,
  2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. Nov. 9, 2006) ........................................................ 10

**Other Sources**

Supplemental Rule B ................................................................................................................. 5, 11

Supplemental Rule E ................................................................................................................. 4, 6, 7

## PRELIMINARY STATEMENT

Plaintiff Jalapa Shipping Limited ("Plaintiff") submits this memorandum of law in opposition to the motion to vacate attachment submitted by defendants, Sundersons Ltd., Simran Meher Ltd., Conti-Agro Nigeria Ltd., and Valechha Holdings Limited ("Alter Ego Defendants"). Plaintiff also submits the Affidavit of Peter Skoufalos, dated May 21, 2008 ("Skoufalos Aff."), in support of its memorandum.

## PROCEDURAL BACKGROUND

Plaintiff filed its Complaint in this action on October 9, 2007. The Court granted Plaintiff's request for an Order for Process of Maritime Attachment and Garnishment against defendants Sundersons Ltd., Milan Nigeria Ltd. ("Milan Nigeria"), Simran Meher Ltd., and Valechha Holdings Limited on the following day. The Court's Order directed garnishee banks to attach Defendants' property in the district up to the amount of $400,250.55.

On or about September 11, 2007, American Express Bank Limited notified Plaintiff that it had attached an electronic fund transfer in the amount of $163,730.50 naming Milan Nigeria as originator. Plaintiff sent Defendants notice of the attachment pursuant to Local Admiralty Rule B.2, and thereafter non-party Conti Agro Nigeria Limited ("Conti Agro") claimed an interest in the transfer and appeared to contest the attachment on January 2, 2008.

On January 4, 2008, the Court heard arguments from the parties regarding Conti Agro's claim that Milan Nigeria was named as originator due to a clerical error, and Conti Agro was, in fact, the actual originator. The Court declined to attach the funds of a non-party and vacated the attachment the following day. Accordingly, Plaintiff filed an amended Complaint on February 8, 2008, naming defendant Conti Agro as a party. Plaintiff filed a Second Amended Verified

1

Complaint ("Second Complaint") on March 11, 2008.

On or about April 8, 2008, HSBC Bank restrained an electronic fund transfer naming defendant Sundersons Ltd. as a beneficiary. The Alter Ego Defendants filed a special appearance pursuant to Supp. R. E(8) on April 24, 2008, and moved to vacate the Court's order of attachment against them, claiming that they are not alter egos of Milan Nigeria.

## FACTUAL BACKGROUND

The full factual background of this motion is set forth in the Second Complaint [Docket # 16], and the Skoufalos Affidavit, dated May 21, 2008, which are incorporated herein by reference. Facts particularly relevant to this motion are set forth below.

Defendant Milan Nigeria Ltd. is the principal corporate entity heading up the so-called "Milan Group" of companies out of Lagos, Nigeria. [Skoufalos Aff. ¶¶ 14, 24, Exs. "E", "M"]. Plaintiff alleges in the Second Complaint that "Defendants are all affiliated entities operating under the name 'Milan Group,'" and that the Defendants "at all relevant times held, and continue to hold, themselves out to the world as being 'associated' members of the 'Milan Group,' an international trading group based in Lagos, Nigeria." [Second Compl ¶ 21].

The accompanying Skoufalos Affidavit spells out various known linkages and connections amongst members of the "Milan Group," run under the auspices of what one public website describes as "the flagship company Milan Nigeria Limited" [Skoufalos Aff. ¶ 18, Ex. "H"]. These connections include common shareholders (the Valechhas); common Boards of Directors; common addresses; common operational centers; interchangeable letterheads; and the movement of funds amongst the members of the Milan Group—including the Alter Ego Defendants—to cover their respective financial obligations. [Skoufalos Aff. ¶¶ 14 - 24, Exs. "E"

2

- "N"]. These connections point to a *prima facie* case for alter ego liability.

Plaintiff's Second Complaint alleges the following facts:

19. On information and belief, the Defendants are all affiliated entities operating under the name "Milan Group" and, at all relevant times held, and continue to hold, themselves out to the world as being "associated" members of the "Milan Group," an international trading group based in Lagos, Nigeria.

20. On information and belief, all the members of the "Milan Group," including the Defendants herein, share officers, directors and personnel, as well as common offices and addresses in, among other places, Lagos, Nigeria.

21. Upon information and belief, the said members of the Milan Group, including Defendants herein, transact business as the "Milan Group," and not individually, and said members are jointly and severally liable for the obligations of each other member of the Milan Group.

22. On information and belief, Milan Nigeria makes payments on behalf of the other Defendants. For example, in September 2007, a bank transfer was originated by Milan Nigeria for Conti-Agro's charter of the M/V HONG PROSPERITY even though Milan Nigeria claims it had no interest in the charter.

23. On information and belief, all the Defendants are controlled and operated by Milan Nigeria from the identical address in Lagos, Nigeria.

24. On information and belief, all the Defendants are controlled and operated by the Valechha family. In addition, the "legal representative/business owner" of Conti-Agro is Ramesh Valechha, who communicates with third parties in commercial matters using the email account of the "Milan Group."

25. Upon information and belief, defendant Milan Nigeria exercises such complete domination and control over defendants Sundersons, Conti-Agro, Simran Meher, and Valechha, and/or disregarded Sundersons's, Conti-Agro's, Simran Meher's and Valechha's corporate form, and/or conducted the business and operations of Sundersons, Conti-Agro, Simran Meher and Valechha as if the same were Milan Nigeria's own, that adherence to the fiction of the separate existence of the Defendants as entities distinct from one another and/or the separate existence of defendants Sundersons, Milan Nigeria, Conti-Agro, Simran Meher and Valechha as distinct from each other, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

26. Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and amongst Defendants, such that any individuality and separateness between said Defendants have ceased, and Defendants, and each of them, are the alter egos of each other.

27. Upon information and belief, the said members of the Milan Group, including Defendants herein, are guarantors of the obligations of each individual member of the Milan Group.

28. On information and belief, defendants Conti-Agro and Milan Nigeria hold themselves out publicly as associated companies with virtually identical product lines, including raw cashew nuts.

## ARGUMENT

### POINT I

### DEFENDANTS LACK STANDING TO CHALLENGE THE ATTACHMENT BECAUSE THEY DO NOT CLAIM AN INTEREST IN THE ATTACHED FUNDS

Under Supp. R. E(4)(f), "[w]henever property is arrested or attached, any person *claiming an interest in it* shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated . . . ." (emphasis added).

Here, the Alter Ego Defendants claim they have "investigated this attachment and, based on presently known information, believe[] that these funds belong to some unknown third party." Def's Memo. at 5. The Alter Ego Defendants deny that they have any interest in the attached funds and, therefore, do not meet Supp. R. E(4)(f)'s basic standing requirement of "claiming an interest in [the attached property].".

Unsurprisingly, the case law presents few examples of defendants contesting attachment of property not their own. Nonetheless, the Alter Ego Defendants here purport to act on behalf of "some unknown third party" in seeking vacatur of the attachment. At a minimum, the Alter Ego Defendants must admit their interest in the attached funds before they can request relief under Supp. R. E(4)(f).

## POINT II

## THE SECOND COMPLAINT ALLEGES A PRIMA FACIE ALTER EGO RELATIONSHIP AND THUS MEETS THE *AQUA STOLI* PLEADING STANDARD

A. **The Plaintiff's Burden**

As the Alter Ego Defendants note correctly, the Second Circuit established the standard a plaintiff must meet in order to sustain an attachment pursuant to Supp. R. B in *Aqua Stoli v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006). Under *Aqua Stoli*, the plaintiff must show, *inter alia*, that "it has a valid *prima facie* admiralty claim against the defendants." *Id.* at 445. This standard also applies to a claim of alter ego liability. *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870, at **38-39 (S.D.N.Y. Aug. 5, 2006)

The Alter Ego Defendants also identify a split among judges in the Southern District of New York regarding the plaintiff's burden in pleading a "valid *prima facie* admiralty claim." *Aqua Stoli*, 460 F.3d at 445. Early cases, such as *Ulisses Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006), suggested that a plaintiff must show reasonable grounds for sustaining an attachment. However, in the two years since *Aqua Stoli*, courts have consolidated behind a lower-threshold "prima facie" standard as opposed to the "reasonable grounds" or "probable cause" standards that existed in the immediate wake of *Aqua Stoli*.

Support for the higher standards began to ebb with *Tide Line*. There – in deciding a motion to vacate an attachment as to alter ego defendants – the court found that "[a]lthough Aqua Stoli does not explicitly address this 'probable cause' or 'reasonable grounds' standard," the fact that *Aqua Stoli* limits plaintiff's burden to stating a prima facie claim "implies that the 'probable cause' or 'reasonable grounds' standard is improper insofar as it purports to go beyond

5

this limited inquiry." 2006 U.S. Dist. LEXIS 95870, at *15.

Recent decisions, such as *Padre Shipping, Inc. v. Yong He Shipping*, 07 Civ. 9682, 2008 U.S Dist. LEXIS 34428 (Apr. 25, 2008), recognize broad support for the prima facie standard. The court noted that "[f]ollowing *Aqua Stoli*, the majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a 'valid prima facie admiralty claim' is the 'prima facie standard' rather than the more demanding 'fair probability' or 'reasonable grounds' standard." *Id.* at *8. *See Dolco Investments, Ltd. v. Moonriver Dev., Ltd.*, 06 Civ. 12876, 2007 U.S. Dist. LEXIS 31101, at *10 (S.D.N.Y. Apr. 26, 2007) (noting that a majority of courts in the district "require the application of the prima facie standard when considering the adequacy of the claim in a maritime vacatur motion."); *Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd.*, 07 Civ. 4546, 2007 U.S. Dist. LEXIS 81137, at *12 (S.D.N.Y. Oct. 30, 2007) (noting that "Aqua Stoli's holding marks a departure from the prior 'probable cause/reasonable basis standard' that certain courts applied <u>before *Aqua Stoli*</u>." (emphasis added)); *see also ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) ("Plaintiff . . . must simply meet a prima facie standard").

The Supp. R. E(4)(f) hearing is "not intended to resolve the dispute between the parties, but to determine if the technical requirements of the Rule have been met." *Brave Bulk*, 2007 U.S Dist. LEXIS 81137, at *12. To make this showing, "[u]nder the prima facie standard, a plaintiff need not present any evidence in support of his claim." *Padre Shipping*, 2008 U.S. Dist. LEXIS 34428, at *8. Nonetheless, courts may look at evidence outside the complaint in support of an alter ego claim. *See, e.g., Tide Line*, 2006 U.S. Dist. LEXIS 95870, at *43-44; *see also Hawknet Ltd. v. Overseas Shipping Agencies*, 07 Civ. 5912, 2008 U.S. Dist. LEXIS 35542, at *9 n.7 (S.D.N.Y. Apr. 29, 2008) (relying on "allegations in submissions other than the complaint" but

6

noting that its decision to do so was "an open question"). *But see Tide Line*, 2006 U.S. Dist. LEXIS 95870, at *42 (limiting plaintiff to allegations in complaint).

At a minimum, Supp. R. E(2)(a) requires that the complaint "state the circumstances from which the claim arises with such particularity that the defendant . . . will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (plaintiff's Supp. R. E(2)(a) burden met because "relevant allegations concern [defendant's] own corporate relationships and practices, so there is no apparent reason why it should have difficulty investigating plaintiff's claim without more specifics than are provided in the Complaint."); *Tide Line v. Eastrade Commodities, Inc.*, 06 Civ. 1979, 2006 U.S. Dist. LEXIS 60770, at *6 (S.D.N.Y. Aug. 25, 2006) (notwithstanding some generalized and conclusory allegations, the complaint, "[t]aken together as a whole," permits the defendant to investigate the facts and frame a responsive pleading).

**B.     Piercing the Corporate Veil**

The Alter Ego Defendants reliance on the sanctity of the corporate veil draws no water where the corporate privilege is used to escape liability and defraud others.

"Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter ego status to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Hawknet*, 2008 U.S. Dist. LEXIS 35542, at **10-11.

The court may consider a number of factors to determine whether the controlling corporation "dominates and disregards its alter ego's corporate form":

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and

7

personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*Id.* at *11 (*citing MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001)); *see also Wajilam Exports*, 475 F. Supp. 2d at 284.

### C. Plaintiff Pleads a Prima Facie Claim for Alter Ego Liability

The Alter Ego Defendants contend that Plaintiff does not sufficiently plead that the Alter Ego Defendants are alter egos of Milan Nigeria. In doing so, they ignore substantial precedent in the district, specific allegations in the Second Complaint, and additional facts set forth above and in the Skoufalos Aff. Moreover, Plaintiff's general allegations are based on calculated inferences made without the benefit of discovery and in the absence of public corporate records. Taken together, Plaintiff's allegations show a pattern of domination and a disregard for corporate formalities that justifies piercing the corporate veil behind which the Alter Ego Defendants hide.

The Second Complaint pleads facts similar to those in other cases where courts found a prima facie claim for alter ego liability. For example, a striking parallel exists in *Hawknet*, where the court denied a motion to vacate an attachment as to alter ego defendants. The plaintiff there alleged that:

> 39. Upon information and belief, the Majdpour Brothers control and dominate the activities and affairs of the defendants [including TOM] .... Although none of the Majdpour brothers are directors of TOM, they have a family relationship with one of the directors, Ms. Rasa Amlashi, and control the activities of the other director, Mr. Asadollah Rahimzadeh, who has worked for them at MOS and may still do. (Cf. Second Compl. ¶ 24)
>
> 40. Upon information and belief, at all material times, there existed such a unity of ownership and interest between Defendant OAS [a known Majdpour company] and the remaining defendants that no separation exists between them and the corporate form of all the defendants has been disregarded such that the Majdpour

8

> Brothers use the defendants interchangeably, without regard for their purported legal separateness, such that one company transacted the business of another and vice versa. (Cf. Second Compl. ¶ 26)
>
> 41. Upon information and belief, at all material times, the defendants have overlapping ownership, management, personnel and purposes such that the defendants do not operate at arm's length from each other but instead operate in concert and for their mutual benefit. (Cf. Second Compl. ¶ 20)
>
> * * *
>
> 43. Upon information and belief, at all material times, the Majdpour Brothers have disregarded the corporate form of the defendants to the extent that the defendants were treated as alter egos of one another without any regard for their alleged corporate separateness. (Cf. Second Compl. ¶ 25)

*Hawknet*, 2008 U.S. Dist. LEXIS 35542, at **12-13. In addition to these general allegations, the court analyzed the plaintiff's "particularized allegations. Specifically, the plaintiff alleged that: (1) defendants "have the same address"; (2) "plaintiff alleges overlapping ownership"; and (3) plaintiff alleges that a wire transfer was made by one defendant on behalf of another. *Id.* at *14; Skoufalos Aff. ¶¶ 14, 20 Ex. "E", "J".

Here, the Second Complaint alleges that (1) the Defendants share office space (Second Compl. ¶¶ 3-7, 20, 23); (2) the Alter Ego Defendants are wholly owned by Milan Nigeria (Second Compl. ¶ 26; *see, e.g.*, Skoufalos Aff. ¶¶ 14 - 24, Exs. "E" - "N"); and (3) the defendants are liable for each others' debts, including payment for vessel charters (Second Compl. ¶¶ 21-22, 27).

Defendant Sundersons is virtually indistinguishable from defendant Milan Nigeria in terms of its day-to-day operations. *See, e.g.* Skoufalos Aff. ¶¶ 20-21, Exs. "J"-"K", wherein Milan Nigeria personnel, using the Milan Group email server, provide operational support in connection with a Sundersons-chartered vessel and where the correspondence from the Milan Group is signed for Sundersons.

9

Moreover, the Defendants have routinely settled other lawsuits in which they have been named as putative alter egos and members of the Milan Group. In these prior lawsuits, the Defendants have not made any distinction amongst the individual members of the Milan Group and settlements have been made on behalf of all defendants, including the putative alter egos. [Skoufalos Aff. ¶¶ 7 - 13, Exs. "A"-"D"].

Alter ego liability was found to have been sufficiently pled in *Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F. Supp. 2d 399 (S.D.N.Y. 2007). There, the court found that plaintiff pled a prima facie case by alleging, *inter alia*, a "same sole director," a "same address," and that the director corresponded for one defendant using the email address of another. *Id.* at 409-410. Plaintiff makes substantially identical allegations in paragraphs 23 and 24 of the Second Complaint.

Likewise, in *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 06 Civ. 15375, 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007), the court denied a motion to vacate because plaintiff's generalized alter ego allegations met the *Tide Line* pleading standard. There, plaintiff alleged that defendant "in this case, and in other cases, made payments on behalf of [its alter ego defendant] to third parties . . ."; that "there existed such unity of ownership and interest . . . that no separation exists between" the defendants "such that the corporate form has been disregarded;" and third, that defendant "dominated and used" the alter ego defendant "for their [sic] own purposes such that there us [sic] no meaningful difference between the three entities and there has been an intermingling of funds between the several entities." *Id.* at *11. So here. *See* Second Compl. ¶¶ 21-22, 25-26.

Many other decisions find a sufficient showing of alter ego liability in the Rule B context based on similar allegations. *See, e.g., World Reach Shipping Ltd. v. Industrial Carriers Inc.*, 06

10

Civ. 3756, 2006 U.S. Dist. LEXIS 83224, at *11 (S.D.N.Y. Nov. 9, 2006); *T&O Shipping, Ltd. v. Source Link Co., Ltd.*, 06 Civ. 7724, 2006 U.S. Dist. LEXIS 88153, at *23-25 (S.D.N.Y. Dec. 6, 2006); *Wajilam Exports*, 475 F. Supp. 2d at 282 (piercing corporate veil despite "higher" admiralty pleading standard).

## POINT III

## PLAINTIFF IS ENTITLED TO DISCOVERY ON THE ALTER EGO ISSUE

A motion to vacate a Rule B attachment should be denied where the Plaintiff has not yet conducted discovery, particularly where the issue is one of alter ego or piercing corporate veil. *See Maryland Tuna Corp. v. M/S BENARES*, 429 F.2d 307, 322 (2d Cir. 1970) (discovery permitted regarding allegation of common ownership of asset); *Rolls Royce Ind. Power (India) v. M.V. FRATZIS*, 1966 A.M.C. 390, 392 (S.D.N.Y. 1995) (discovery allowed on motion to vacate attachment to determine defendant's ownership interest in attached assets); *Japan Line, Ltd. v. Wilco Oil Ltd.*, 424 F. Supp. 1092, 1094 (D. Conn. 1976) ("While attachment is a powerful weapon that should be carefully controlled by the courts, the plaintiff is entitled to discover facts that will either provide the basis for the attachment or compel its quashing"); *Sea Terminals, Inc. v. Independent Container Line, Ltd.*, 89 Civ. 6931, 1989 WL 222634, at *2 (S.D.N.Y. 1989) ("Caribbean, it contends, is a totally separate and unrelated company to Independent. This, of course, may or may not be so, but it is too early to decide these issues until the facts are fully fleshed out after discovery"); *see Int'l Marine Consultants v. Karavias*, 82 Civ. 8296, 1985 U.S. Dist. LEXIS 19272, at *4 (S.D.N.Y. June 3, 1985) (alter ego claim decided only after discovery).

11

## CONCLUSION

For the reasons set forth above, the Alter Ego Defendants' motion to vacate attachment should in all respects be denied.

Dated: New York, New York
May 21, 2008

                                      BROWN GAVALAS & FROMM LLP
                                      Attorneys for Plaintiff
                                      JALAPA SHIPPING LIMITED

By: _____
           Peter Skoufalos (PS 0105)
           355 Lexington Avenue
           New York, New York, 10017
           Tel: (212) 983-8500
           Fax: (212) 983-5946