BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
JALAPA SHIPPING LIMITED
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK
-------------------------------------------------------------X
JALAPA SHIPPING LIMITED,                         07 Civ. 8715 (RJH)

                Plaintiff,                          **AFFIDAVIT IN**
                                                 **OPPOSITION TO**
      - against -                               **DEFENDANTS' MOTION**
                                                 **TO VACATE MARITIME**
SUNDERSONS LTD., MILAN NIGERIA LTD.,             **ATTACHMENT**
SIMRAN MEHER LTD., VALECHHA HOLDINGS
LIMITED and CONTI-AGRO NIGERIA LIMITED,

                Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

    PETER SKOUFALOS, being duly sworn, deposes and says:

    1.    I am a member of the firm of Brown Gavalas & Fromm LLP and am admitted to the bar of this Honorable Court. I submit this affidavit in opposition to the Defendants' motion for an order "vacating all Orders of Attachment as against them which have been issued in this matter." [Dfdts.' Notice of Motion].

### Current Procedural Posture

    2.    Plaintiff filed its Complaint in this action on October 9, 2007, and sought issuance of process of maritime attachment and garnishment to secure a potential award for Plaintiff's damages arising from Defendants' breach of a charter agreement for the

transport of rice from India to Lagos, Nigeria. On or about September 11, 2007, American Express Bank Ltd. notified plaintiff that it restrained an electronic fund transfer (EFT) originated by defendant Milan Nigeria in the amount of $163,730.50.

3. Thereafter, Conti-Agro Nigeria Ltd. ("Conti-Agro") appeared specially—at that time as a non-party claiming an interest in the attached funds—claiming a bank error in naming the originator of the EFT as defendant Milan Nigeria, rather than Conti-Agro. On January 8, 2008, this Court granted Conti-Agro's motion (as a non-party) and directed that the funds restrained be released.

4. On February 8, 2008, Plaintiff filed an Amended Verified Complaint, adding Conti-Agro as a defendant based on its membership in the Milan Group of companies and an alter ego and/or guarantor of the obligations of the other members of the Milan Group, including the other defendants named herein. Plaintiff filed a Second Amended Verified Complaint on March 11, 2008 to correct an allegation concerning the identity of the named charterer in the underlying charter agreement at issue and to append a copy of the charter agreement.

5. On or about April 4, 2008, HSBC Bank notified Plaintiff that it restrained an electronic fund transfer for the benefit of defendant Sundersons Ltd. in the amount of $129,517.51.

6. Defendant Sundersons has not conceded that it has an interest in the attached property.

### Other S.D.N.Y. Actions involving these Defendants

7. I represented plaintiff in an earlier action in this court entitled *Tudor Shipping Company v. Milan Nigeria Limited, Sundersons Limited, Simran Meher*

*Limited, Sunbeam International Investment Corporation, Seatrans and Trading Company Limited, and Milan Group*, 07 Civ. 5806 (JSR) ("the Tudor Shipping Action"). That action concerned a claim for unpaid demurrage and breach of a charter agreement between Plaintiff and defendant Sundersons Ltd. The complaint prayed for an order of maritime attachment and garnishment and named all other defendants as members of the "Milan Group." The complaint further alleged that the members of the "Milan Group" were liable as alter egos and guarantors of Sundersons's liability under the subject agreement. A copy of the Verified Complaint filed in this action is annexed hereto as Exhibit "A".

8. On or about June 27, 2007, Standard Chartered Bank restrained property of defendant Simran Meher Limited ("Simran Meher") in the amount of $23,200.00, in compliance with the order of attachment issued in that case.

9. On or about July 9, 2007, a Settlement Agreement was concluded in the Tudor Shipping Action between the plaintiff and all defendants (referred to as "Respondents" in the Settlement Agreement), including Milan Nigeria, Simran Meher, Sundersons, and defendant Valechha Holdings. Under the terms of the settlement, plaintiff was to receive a payment in the amount of $165,798.99 in full and final settlement of its claim in the Tudor Shipping Action. A copy of the Settlement Agreement is annexed hereto as Exhibit "B".

10. The Settlement Agreement makes no effort to exclude any of the defendants in the Tudor Shipping Action from the Settlement Agreement. Indeed, the Settlement Agreement expressly states that the "Respondents shall pay" the settlement

amount in full (i.e., all the defendants named in the Tudor Shipping Action) in settlement of that action.

11. I also represented plaintiffs in an earlier action in this court entitled *Cruiser Shipping Pte. Ltd., et al. v. Milan Nigeria Limited, Sundersons Limited, Simran Meher Limited, and Valechha Holdings Limited*, 07 CV 4036 (JGK) ("the Cruiser Shipping Action"). That action, like the present one, alleged that the defendants breached the charter agreement by detaining plaintiffs' vessel in Nigeria to compel settlement of an alleged cargo claim. The complaint prayed for an order of maritime attachment and garnishment against all defendants, and identifies all other defendants as members of the "Milan Group." [Second Amended Complaint ¶ 21]. The complaint further alleges that the members of the "Milan Group" are liable to the plaintiffs as alter egos and guarantors of Milan Nigeria's and Sundersons's liability under the subject agreement. A copy of the Second Amended Verified Complaint filed in the Cruiser Shipping Action is annexed hereto as Exhibit "C".

12. On or about October 4, 2007, Standard Chartered Bank restrained $417,614.40 of defendant Milan Nigeria's property pursuant to the order of attachment issued in the Cruiser Shipping Action.

13. On or about, April 16, 2008, the parties concluded a settlement whereby: (i) the attached funds would remain with the garnishee Standard Chartered Bank as security for the plaintiffs' London arbitration claims and (ii) defendants Milan Nigeria and Sundersons accepted a cargo claim letter of guarantee as security for counterclaims against Plaintiffs in the London arbitration. A stipulation entered into between plaintiffs

4

and all defendants, including defendants Simran Meher and Valechha Holdings, is annexed hereto as Exhibit "D".

## The Connections Amongst the Defendants

14. Annexed hereto as Exhibit "E" are pages from various websites, including the website of defendant Milan Nigeria, in which Milan Nigeria is generally described as the leading member of the "Milan Group and associate companies."

15. I have previously submitted an affidavit in this action in opposition to the motion of defendant Conti-Agro when Conti-Agro appeared as a non-party to claim an interest in certain attached funds. Conti-Agro has now appeared in this action, and has joined in the current motion, as a party defendant.

16. In my earlier affidavit, I set out various factors, and attached documents, linking defendant Milan Nigeria with defendant Conti-Agro. My earlier affidavit dated January 2, 2008 is annexed hereto as Exhibit "F". These factors include the public reference by Milan Nigeria to Conti-Agro as an "associate company," identical addresses, common ownership (by the Valechha interests), and a common email address. [1st Skoufalos Aff. ¶¶ 5-8; Exs. "D-G"] [Docket #9].

17. The recap of the Conti-Agro charter agreement indicates that Sundersons and its alter egos, namely Conti-Agro, are used interchangeably when chartering vessels. Although the charterparty names Conti-Agro as charterer, the recap bears a heading "MV Hong Prosperity/Sundersons [Charterparty]", indicating that the charterparty failed to distinguish between the two. A copy of the charterparty is attached hereto as Exhibit "G".

18. The "legal representative/business owner" of Conti-Agro is Ramesh Valechha. [1st Skoufalos Aff. ¶ 6, Ex. D].

19. Defendants Milan Nigeria and Conti-Agro also hold themselves out regularly as inextricably intertwined commercially. For example, on certain business portals, Milan Nigeria advertises "sesame seeds" for export from Nigeria. The portal indicates that payment is to be made to a "Conti-Agro USD Account." That same site describes Conti-Agro as "operating under the flagship company Milan Nigeria." Attached hereto as Exhibit "H" are relevant pages from http://www.alibaba.com.

20. Ramesh Valechha is the Chairman of the "Milan Group." Vikram Valechha is Group Executive Director. An organizational chart for the "Milan Group" is annexed hereto as Exhibit "I".

21. Mr. Ramesh Valechha, himself, apparently makes little or no effort to maintain corporate distinctions. Annexed hereto as Exhibit "J" is an email from Mr. Valechha on an unrelated charter party agreement in which Sundersons was the charterer. As can be seen, Mr. Valechha's email is sent on the "Milan Group" email server and expresses regret for the delayed payment of freight on behalf of Sundersons. He goes on to refer to "our bankers" having ultimately confirmed the payment of the freight. The correspondence is signed "for and on behalf of Sundersons." This same exhibit, at page two, confirms that the vessel owners had previously received a payment of freight from defendant Simran Meher, even though the freight payment was presumably payable by from Sundersons.

22. Milan Nigeria also exercises operational control over Sundersons's chartering activities. Annexed hereto as Exhibit "K" is an email from

operations@milannigeria.com directing the purchase of bunker fuel on behalf of Sundersons in an unrelated charter party agreement. The email goes on to request an advance of cash from the master of the vessel "to enable us to arrange the Fresh Water." Finally, the email is signed Sundersons / Milan Group.

23. Annexed hereto as Exhibit "L" is a D&B Report on defendant Simran Meher. The report gives identical addresses in Gibraltar for defendants Valechha Holdings and Simran Meher.

24. Annexed hereto as Exhibit "M" is ICC International Report dated December 20, 2006 pertaining to defendant Sundersons. The report provides an address identical to the known address of Milan Nigeria and Conti-Agro Nigeria. Defendant Milan Nigeria is also listed as owning 100% of the shares of defendant Sundersons. In addition, defendant Conti-Agro Nigeria is listed as a corporate affiliate. Finally, the ICC Report describes Sundersons's "Operations" as follows: "Milan Group distributes about 300,000 tons of par-boiled rice into Nigeria . . . ".

25. Annexed hereto as Exhibit "N" is ICC International Report dated December 20, 2006 pertaining to defendant Milan Nigeria. The report provides an address identical to the known address of defendants Sundersons and Conti-Agro. Vikram, Ramesh, and Rajesh Valechha are also listed as the "major shareholders" of the company. In addition, Milan Nigeria and Sundersons share common management, personnel, and Boards of Directors. Finally, defendants Sundersons and Conti-Agro are listed as corporate affiliates of Milan Nigeria.

26. The foregoing facts, as alleged in Plaintiff's Second Amended Verified Complaint, clearly establish a *prima facie* case of alter ego liability against defendants, including defendant Sundersons.

Dated: New York, New York
May 21, 2008

_____
Peter Skoufalos (PS-0105)

Sworn to before me this
21st day of May, 2008

_____
NOTARY PUBLIC

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 2010

8