# SKOUFALOS AFFIDAVIT

# MAY 21, 2008

# EXHIBIT A

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
TUDOR SHIPPING COMPANY.
355 Lexington Avenue
New York, New York 10017
212-983-8500

JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

TUDOR SHIPPING COMPANY,

        Plaintiff.

    -against-

MILAN NIGERIA LIMITED, SUNDERSONS
LIMITED, SIMRAN MEHER LIMITED, SUNBEAM
INTERNATIONAL INVESTMENT CORPORATION,
SEATRANS AND TRADING COMPANY LIMITED
and MILAN GROUP,

        Defendants..

-------------------------------------------------------------X

**07 CIV 5806**

07 Civ.

VERIFIED COMPLAINT

Plaintiff, TUDOR SHIPPING COMPANY. ("Plaintiff"), by its attorneys, Brown Gavalas

& Fromm LLP, as and for its Verified Complaint against defendants, MILAN NIGERIA

LIMITED ("Milan Nigeria"), SUNDERSONS LIMITED ("Sundersons"), SIMRAN MEHER

LIMITED ("Simran Meher"), SUNBEAM INTERNATIONAL INVESTMENT

CORPORATION ("Sunbeam"), SEATRANS AND TRADING COMPANY LIMITED

("Seatrans"), and MILAN GROUP ("Milan Group") (Milan Nigeria, Sundersons, Simran Meher,

Sunbeam, Seatrans and Milan Group are sometimes collectively referred to herein as "the

Defendants"), alleges upon information and belief as follows:

    1.   This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333.

2.    At all material times, Plaintiff was and now is a corporation duly organized and existing under and by virtue of the laws of the Marshall Islands, with an office and place of business in Athens, Greece.

3.    Upon information and belief, at all material times, defendant Milan Nigeria, was and still is a corporation organized and existing under and by virtue of the laws of Nigeria, with an office and principal place of business at 52A and 243 Kofo Abayomi St., Victoria Island, Lagos, Nigeria.

4.    Upon information and belief, at all material times, defendant Sundersons was and still is a foreign corporation, with an office and principal place of business at 52A and 243 Kofo Abayomi St., Victoria Island, Lagos, Nigeria.

5.    Upon information and belief, at all material times, defendant Simran Meher, was and still is a foreign corporation, organized and existing under and by virtue of the laws of Gibraltar, with an office and principal place of business at Suite 7B and 8B, 50 Town Range Gibraltar and also at 52A and 243 Kofo Abayomi St., Victoria Island, Lagos, Nigeria.

6.    Upon information and belief, at all material times, defendant Sunbeam, was and still is a foreign corporation, with an office and principal place of business at 52A and 243 Kofo Abayomi St., Victoria Island, Lagos, Nigeria.

7.    Upon information and belief, at all material times, defendant Seatrans, was and still is a foreign corporation, with an office and principal place of business at 52A and 243 Kofo Abayomi St., Victoria Island, Lagos, Nigeria.

8.    Upon information and belief, at all material times, defendant Milan Group, was and still is a foreign corporation, with an office and principal place of business at 52A and 243 Kofo

Abayomi St., Victoria Island, Lagos, Nigeria.

9. At all material times, Plaintiff was the disponent owner of the motor vessel AL MUHIEDDINE (hereinafter sometimes referred to as "the Vessel").

10. On or about November 8, 2006, Plaintiff, as disponent owner, and defendant Sundersons, as charterer, entered into a charter party agreement whereby Plaintiff agreed to let and Sundersons agreed to hire the Vessel for a one-time voyage for the transport of bagged rice, under certain terms and conditions, from Kakinada, India to Cotonou, Benin and Port Harcourt, Nigeria ("Charter Agreement").

11. Under the terms of the Charter Agreement, Plaintiff was entitled to receive demurrage in the amount of $8,500 for each day, or portion thereof, that defendant Sundersons, as charterer, exceeded the time allowed for loading and discharging the cargo of bagged rice.

12. On February 12, 2007, the Vessel arrived at the first discharge port, Cotonou, Benin and on January 5, 2007, the Vessel arrived at the second discharge port, Port Harcourt, Nigeria, incurring total discharge port demurrage of $166,502.32. No part of this demurrage has been paid, despite due demand therefor.

13. Under the terms of the Charter Agreement, all disputes between the parties are to be decided by arbitration in London, pursuant to English law. Plaintiff has now taken steps to commence said arbitration proceedings in London.

14. This action is in aid of said London arbitration proceedings in accordance with 9 U.S.C. § 8. Plaintiff seeks to obtain adequate security to satisfy a potential London arbitration award in Plaintiff's favor.

15. In addition to recovering the principal amount due Plaintiff pursuant to the Charter Agreement, Plaintiff also fully anticipates recovering interest, costs and attorneys' fees, which are routinely awarded to the prevailing party in London arbitration proceedings. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claim | $166,502.32 |
| b. | 3 years of interest at 6% per annum, compounded quarterly | $32,570.88 |
| c. | Costs (arbitrators fees, attorneys' fees etc.) | $100,000.00 |
| | TOTAL | $299,073.20 |

16. On information and belief, the Defendants are all affiliated entities operating under the name "Milan Group" and, at all relevant times held, and continue to hold, themselves out to the world as being members of the "Milan Group," an international trading group based in Lagos, Nigeria.

17. On information and belief, all the members of the "Milan Group," including the Defendants herein, share officers, directors and personnel, as well as common offices and addresses in, among other places, Lagos, Nigeria.

18. Upon information and belief, the said members of the Milan Group, including Defendants herein, transact business as the "Milan Group," and not individually, and said members are jointly and severally liable for the obligation of each other member of the Milan Group, including Sundersons' obligations under the Charter Agreement.

19. Upon information and belief, the said members of the Milan Group, including Defendants herein, are guarantors of the obligations of each individual member of the Milan

4

Group, including Sundersons' obligations under the Charter Agreement.

20. Upon information and belief, defendants Milan Nigeria, Simran Meher, Sunbeam, Seatrans and Milan Group exercise such complete domination and control over defendant Sundersons, and/or disregarded Sundersons' corporate form, and/or conducted the business and operations of Sundersons as if the same were their own, that adherence to the fiction of the separate existence of the Defendants as entities distinct from one another and/or the separate existence of defendant Sundersons, as distinct from said Defendants, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

21. Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and amongst Defendants, such that any individuality and separateness between said Defendants have ceased, and Defendants, and each of them, are the alter egos of each other.

22. Upon information and belief, defendants cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but they are believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts and other property, in the hands of garnishees in the District including but not limited to American Express Bank, Ltd.; ABN-AMRO Bank; Standard Chartered PLC; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank, Mashreq Bank, Bank of China and Wachovia Bank, which are believed to be due and owing to the Defendants.

5

Plaintiff prays:

A.  That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.  That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Standard Chartered PLC; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Deutsche Bank; Citibank, Mashreq Bank, Bank of China and Wachovia Bank, which are due and owing to the Defendants, in the amount of $299,073.20, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B, answer the matters alleged;

C.  That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D.  That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
      June 19, 2007

                    BROWN GAVALAS & FROMM LLP
                    Attorneys for Plaintiff
                    TUDOR SHIPPING COMPANY.

By: _____
                    Peter Skoufalos (PS-0105)
                    355 Lexington Avenue
                    New York, New York 10017
                    212-983-8500

## VERIFICATION

STATE OF NEW YORK    )
                           : ss.:
COUNTY OF NEW YORK  )

        PETER SKOUFALOS, being duly sworn, deposes and says:

        1.     I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiff.

        2.     I have read the foregoing Verified Complaint and I believe the contents thereof are true.

        3.     The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

        4.     The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

                                PETER SKOUFALOS

Sworn to before me this
19th day of June 2007

Notary Public

DONALD P. BLYDENBURGH
Notary Public, State of New York
No. 01BL6085858
Qualified in Suffolk County
Term Expires: March 16, 20__

8

# SKOUFALOS AFFIDAVIT

# MAY 21, 2008

# EXHIBIT B

IN THE MATTER OF THE ARBITRATION ACT 1996

AND IN THE MATTER OF AN ARBITRATION

BETWEEN:

(1) TUDOR SHIPPING COMPANY INC., Marshall Islands

<u>Claimants</u>

- and -

(2) SUNDERSONS LIMITED

And others as described below

<u>Respondents</u>

---

## SETTLEMENT AGREEMENT

---

This Agreement ("Agreement") is executed on 9 July 2007 between Tudor Shipping Company Inc. Marshall Islands, (1) (the Claimants) and Sundersons Limited (2) (the Respondents). All references to the Respondents in this agreement include the following entities which term shall include but is not limited to Milan Nigeria Limited, Simran Meher Limited, Sunbeam International Investment Corporation, Seatrans and Trading Company Limited, and the Milan Group.

**WHEREAS:**

1) By a charter party dated 8 November 2006 on amended synacomex terms with additional clauses the Claimants as disponent owners chartered the Vessel "Al Muhieddine" ('the Vessel') to Sundersons Limited for a voyage for the transport of bagged rice from Kakinada, India to Cotonou, Benin and 'port Harcourt Nigeria ('the Charterparty'). The Charterparty clause 50 provided for English law and arbitration to apply.

LDNLIT 1295950.1

2) The cargo was loaded and Bills of Lading were issued at Kakinada, India on 8.12.06 numbered 1 – 20 with notify party/receivers being Milan Nigeria Limited or in some instances Globe West S.A ('the Bills of Lading').

3) Disputes having arisen between the parties, the Claimants commenced arbitration proceedings on 1 June 2007 by appointing Bruce Harris Esq. as their arbitrator and on 6 June 2007 the Respondents appointed David Barnett Esq. as their arbitrator.

4) The Claimants claim demurrage and freight due under the Charterparty.

5) On 19 June 2007 the Claimants filed an application with the Southern District Court of New York (claim no. 07 Civ 5806) (the New York Proceedings) for a rule B Order against the Respondents, which was subsequently granted and remains in place (the Rule B order).

AND WHEREAS without any admission of liability the parties hereto are desirous of settling all claims and counter-claims whatsoever and howsoever arising out of or otherwise relating to the Charterparty, Bills of Lading and New York Proceedings, including but not limited to those set out in the pleadings.

NOW IN CONSIDERATION OF the mutual covenants and agreements hereinafter set out and other good and valuable consideration the receipt sufficiency and adequacy whereof is expressly and irrevocably acknowledged

IT IS HEREBY MUTUALLY AGREED THAT:-

1) all claims and counter-claims, whatsoever and howsoever arising out of or otherwise in relation to the Charterparty, Bills of Lading and New York Proceedings, including

LDNLIT 1295950.1

but not limited to those set out in the pleadings, including all issues in relation to interest and costs are settled fully and finally on the following basis:

forthwith the Respondents shall pay in full and without deduction the sum of United States Dollars One Hundred and Seventy One Thousand Five Hundred and Twenty Two and ninety seven cents (**US$165,798.00**) to the Claimants' nominated account, which is:
**NATIONAL WESTMINSTER BANK PLC**
**116 FENCHURCH STREET**
**LONDON EC3M 5AN**
**BANK SORT CODE: 56-00-18**
**IBAN No: GB09 NWBK 6073 0104 1052 73**
**IBAN BIC:  NWBK GB 2L**
**Account Name: Jackson Parton US$ Client Reserve Account**
**Account No:  140/1/04105273**

Reference NGP/MGM/ AL Muhieddine (the Settlement Sum)

   a)  each party to bear its own arbitrator's and lawyer's fees;

2)  the Settlement Sum is to be held by Jackson Parton on Escrow terms (or equivalent) until the Rule B Order obtained by the Claimants (Tudor Shipping Company) is discharged by the New York Court in the New York Proceedings;

3)  upon receipt of Usd 165,798.00 referred to in 1) (a) above, the Claimants will instruct their New York Attorneys to apply to the New York Court to discharge the Rule B Order against all parties;

4)  once obtained the said discharge order will be served by the Claimants' New York Attorneys on all the banks that were served with the Rule B order and a copy of the discharge order will be sent to the Respondents;

5)  It is mutually agreed that as soon as the Rule B Order obtained by the Claimants (Tudor Shipping Company) is discharged by the New York Court as referred to in 3) and 4) above Jackson Parton will:

   a)  release the Settlement Sum to the Claimants' nominated account; and,

LDNLIT 1295980.1

b) notify Messrs Bruce Harris and David Barnett of this settlement and discontinue the arbitration with no order as to costs

6) the parties and their legal advisors shall make no further references to or otherwise discuss the subject matter of the claims and counter-claims; the terms of this agreement and the negotiations that led up to it to remain strictly private and confidential.

7) This Agreement shall be subject to English law and to the English High Court of Justice who shall have exclusive jurisdiction to hear and determine any disputes in relation to this matter.

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their duly appointed solicitors on this 9th day of July 2007.

........................................    ........................................
Solicitors appointed by Claimants            On Behalf of the Respondents
Jackson Parton                               Sundersons Ltd.

# SKOUFALOS AFFIDAVIT

# MAY 21, 2008

# EXHIBIT C

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiffs
CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.,                    07 CV 4036 (JGK)

                              Plaintiffs,         **SECOND**
                                                  **AMENDED VERIFIED**
        -against-                                 **COMPLAINT**

SUNDERSONS LTD., MILAN NIGERIA LTD.,
SIMRAN MEHER LTD. and VALECHHA
HOLDINGS LIMITED,

                              Defendants.
--------------------------------------------------------X

        Plaintiffs, CRUISER SHIPPING PTE LTD. ("Cruiser") and UNIVERSAL

NAVIGATION PTE LTD. ("Universal," and hereinafter with Cruiser, the "Plaintiffs"), by their

attorneys, Brown Gavalas & Fromm LLP, as and for their Verified Complaint against

Defendants, SUNDERSONS LTD. ("Sundersons"), MILAN NIGERIA LTD. ("Milan Nigeria"),

SIMRAN MEHER LTD. ("Simran Meher") and VALECHHA HOLDINGS LIMITED

("Valechha Holdings") (hereinafter the "Defendants"), allege upon information and belief as

follows:

        1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333.

        2.    At all material times, plaintiff, Cruiser was, and now is, a foreign corporation with

an office and place of business at 3 Shenton Way, 11-04 Shenton House, Singapore, 068805 and was the registered owner of the motor vessel CRUISER ("the Vessel")

3.    At all material times, plaintiff, Universal, was and now is a foreign corporation with an office and place of business at 3 Shenton Way, 11-04 Shenton House, Singapore, 068805, and was the disponent owner of the Vessel.

4.    Upon information and belief, at all material times, defendant, Sundersons, was and now is a foreign corporation with an office and place of business at 52a Kofo Abayomi Street, Victoria Island, Lagos, Nigeria.

5.    Upon information and belief, at all material times, defendant, Milan Nigeria, was and now is a foreign corporation with an office and place of business at 243 Kofo Abayomi Street, Victoria Island, Lagos, Nigeria.

6.    Upon information and belief, at all material times, defendant, Simran Meher was and now is a foreign corporation with an office and place of business at 52A Kofo Abayomi Street, Victoria Island, Lagos, Nigeria.

7.    Upon information and belief, at all material times, defendant, Valechha Holdings, was and now is a foreign corporation with an office and place of business at 52A Kofo Abayomi Street, Victoria Island, Lagos, Nigeria.

8.    On or about August 4, 2006, a charter party agreement was entered into by and between plaintiff, Universal, and defendant, Sundersons, whereby Universal agreed to let, and Sundersons, as charterer, agreed to hire the M/V CRUISER for a voyage, under certain terms and conditions, from Kakinada Port, India to Port Harcourt, Nigeria ("Charter Agreement").  On or about August 30, 2006, September 9, 2006 and September 12, 2006, plaintiff Cruiser issued twenty bills of lading, Nos. C1 to 20, with respect to cargo transported aboard the Vessel.

2

9.   At all relevant times, defendant Milan was the receiver and/or consignee of the cargo evidenced by said bills of lading.  The said bills of lading incorporated all of the terms of the Charter Agreement, including the arbitration clause therein and are therefore subject to the same arbitration clause.

10.   Clause 50 of the Charter Agreement contains a London arbitration clause which provides :

> "Should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three (3) persons in London, one to be appointed by each of the parties hereto and the third by the two so chosen:  their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be a rule of the court. The Arbitrators shall be commercial men."

11.   On October 19, 2006, the Vessel arrived at the first discharge port, Lagos, Nigeria and on November 6, 2006, the Vessel arrived at the second discharge port, Port Harcourt, Nigeria, incurring total discharge port demurrage, payable by Defendants, of $36,755.56.

12.   At Port Harcourt, the Defendants claimed damage to the cargo discharged at Port Harcourt and prevented the departure of the Vessel by blocking the necessary clearances.  In addition, on December 6, 2006, Defendants caused the judicial arrest of the Vessel in Port Harcourt and, without authority from the Court in Port Harcourt or from the Plaintiffs, placed heavily armed men on board the Vessel, effectively holding the Vessel and crew to ransom.

13.   With the Vessel now detained and subject to judicial arrest, Defendants demanded payment of $198,987.60 on grounds of alleged cargo shortage, despite the fact that figures from the master indicated that there was no shortage claim when the quantity of cargo discharged in Port Harcourt was compared to the quantity on the cargo manifest; i.e. the quantity placed on board the Vessel at loading.

14.   Plaintiffs made various offers to obtain a release of the Vessel pending adjudication,

on the merits of the alleged cargo claim, including an offer to post a guarantee letter from Plaintiffs' insurer. Such guarantee letters are routinely offered and accepted in international shipping transactions and are considered good and acceptable security for claims.

15. Despite Plaintiffs' repeated and reasonable efforts, Defendants refused to accept security in substitution of the continued detention of the Vessel and demanded resolution of the parties' dispute in Nigeria, in breach of the Defendants' obligation to submit all disputes between the parties to arbitration in London.

16. With the Vessel remaining under arrest and detention by Defendants, and in further breach of the binding London arbitration clause, Defendants refused to release the Vessel in substitution for comparable security and demanded payment of $70,000, to be made into a Swiss bank account, and the written agreement of the Plaintiffs to forgo their claims against Defendants, including claims for demurrage, in return for the release of the Vessel.

17. Plaintiffs' payment of $70,000 to Defendants was made under both economic and physical duress, and was procured due to Defendants' breach of the Charter Agreement in detaining the Vessel in Nigeria and seeking to compel Plaintiffs' to forego their rights under the Charter Agreement and applicable law.

18. Defendants' attempt to pursue their claims against Plaintiffs outside London, and their attempts to compel the Plaintiffs to agree to Nigerian jurisdiction or to pay the alleged claim, constitute a breach of contract, economic duress and oppressive and/or vexatious and/or bad faith conduct because:

    a.  the Plaintiffs and their insurers have offered to secure Defendants' alleged claims with a Club Guarantee with English law and arbitration; and

    b.  the sole purpose of the arrest and the Defendants' refusal to negotiate release of

4

the Vessel against comparable substitute security was intended to compel and coerce Plaintiffs, under extreme economic duress, to agree to Nigerian jurisdiction and law or into paying Defendants' claim by way of settlement.

19.  Clause 54 of the Charter Agreement provides as follows:

> "In the event of any alleged cargo claim/shortages Charterers/Receivers are to accept Owners' Pandi Club Letter of Guarantee/bond only. No cash settlement to be allowed whatsoever. Owners Pandi Club is South of England.
>
> If vessel is not released then immediately vessel goes on detention at USD12,000 per day pro rata plus costs of bunkers consumed and any other directly related costs until vessel is released."

A copy of the Charter Agreement is attached hereto as Exhibit "A."

20.  Plaintiffs have incurred costs and losses as a result of the detention of the Vessel and the breaches of the Charter Agreement on the part of Defendants, their servants and agents, including load port and discharge port demurrage, detention charges, bunkers consumed during the detention period, daily running expenses and earning losses, in an amount of $311,650.00, as best as can be determined at the present time.

21.  On information and belief, the Defendants, including defendant Valechha Holdings, are all affiliated entities operating under the name "Milan Group" and, at all relevant times held, and continue to hold, themselves out to the world as being members of the "Milan Group," an international trading group based in Lagos, Nigeria.

22.  On information and belief, all the members of the "Milan Group," including the Defendants herein, share officers, directors and personnel, as well as common offices and addresses in, among other places, Lagos, Nigeria.

23.  Upon information and belief, the said members of the Milan Group, including Defendants herein, transact business as the "Milan Group," and not individually, and said

members are jointly and severally liable for the obligation of each other member of the Milan Group, including Sundersons' obligations under the Charter Agreement.

24. Upon information and belief, the said members of the Milan Group, including Defendants herein, are guarantors of the obligations of each individual member of the Milan Group, including Sundersons' obligations under the Charter Agreement.

25. Upon information and belief, defendant Valechha Holdings exercises such complete domination and control over defendants Sundersons, Mila Nigeria and Simran Meher, and/or disregarded Sundersons's, Milan Nigeria's and Simran Meher 's corporate form, and/or conducted the business and operations of Sundersons, Milan Nigeria and Simran Meher as if the same were Valechha Holdings's own, that adherence to the fiction of the separate existence of the Defendants as entities distinct from one another and/or the separate existence of defendants Sundersons, Milan Nigeria and Simran Meher, as distinct from Defendant Valechha Holdings, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

26. Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and amongst Defendants, such that any individuality and separateness between said Defendants have ceased, and Defendants, and each of them, are the alter egos of each other.

27. In accordance with a binding arbitration clause in the Charter Agreement and in the bills of lading, Plaintiffs will commence arbitration proceedings in London, England.

28. This action is in aid of said arbitration proceedings, as aforesaid, in accordance with 9 U.S.C. § 8. Plaintiffs seek to obtain adequate security to satisfy a potential London arbitration award in Plaintiffs' favor.

29. Plaintiffs sue on their own behalf, and as agents and trustees on behalf of any other persons or parties who may now have, or hereinafter acquire, an interest in this action.

30. Insofar as legal costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration proceedings, Plaintiffs also seek to secure claims for interest and anticipated legal costs and attorneys fees. As best as can now be estimated, Plaintiffs expect to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| a. | On the principal claim | $311,650.00 |
| b. | Interest at 6% per annum, compounded quarterly for 3 years | $ 60,964.40 |
| c. | Costs (arbitrators' fees, attorneys' fees, etc.) | $ 45,000.00 |
| | TOTAL | $417,614.40 |

23. Upon information and belief, Defendants cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but are believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts and other property, in the hands of garnishees in the District including but not limited to American Express Bank, Ltd.; ABN-AMRO Bank; Mashreq Bank; Standard Chartered PLC; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank, Bank of China and Wachovia Bank, which are believed to be due and owing to the Defendants.

WHEREFORE Plaintiffs pray:

A. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Second Amended Verified Complaint;

7

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Mashreq Bank; Standard Chartered PLC; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank, Bank of China and Wachovia Bank, which are due and owing to the Defendants, in the amount of $417,614.40, to secure the Plaintiffs' claim, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged;

C. That this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D. That Plaintiffs have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
      September 6, 2007

                        BROWN GAVALAS & FROMM LLP
                        Attorneys for Plaintiffs
                        CRUISER SHIPPING PTE LTD. and
                        UNIVERSAL NAVIGATION PTE LTD.

By:                     
                        Peter Skoufalos (PS-0105)
                        355 Lexington Avenue
                        New York, New York 10017
                        212-983-8500

**VERIFICATION**

STATE OF NEW YORK    )
                       : ss.:
COUNTY OF NEW YORK  )

      PETER SKOUFALOS, being duly sworn, deposes and says:

      1.     I am a member of the bar of this Honorable Court and of the firm of Brown Gavalas & Fromm LLP, attorneys for Plaintiffs.

      2.     I have read the foregoing Second Amended Verified Complaint and I believe the contents thereof are true.

      3.     The reason this Verification is made by deponent and not by Plaintiffs is that Plaintiffs are foreign corporations, no officer or director of which is within this jurisdiction.

      4.     The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiffs.

PETER SKOUFALOS

Sworn to before me this
6th day of September, 2007

Notary Public

EVAN B. RUDNICKI
Notary Public of the State of New York
No. 02RU6142314
Qualified in Rockland County
Term Expires March 13, 20__

9

# EXHIBIT A

04-APR-2007  17:44  FROM  JACKSON PARTON          TO  0012129835946          P.22/83

# CONTINENT GRAIN CHARTERPARTY
## Code name: "SYNACOMEX 2000"

Adopted PARIS 1947 by SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES
amended 1950, 1974, 1991 and 2000 in agreement with COMITE CENTRAL DES ARMATEURS DE FRANCE
in conjunction with Chambre Arbitrale Maritime et Paris and the French Cele/Grreg and S & P. Brokers Association

**ORIGINAL**

PART I

| | |
|---|---|
| 1. Shipbroker(s)<br>Anglomar Shipping Ltd., London | 2. Place and date of Charter Party<br>London 04th AUGUST 2006 |
| 3. Owners and place of business (state full name and address) (Cl. 1)<br>Universal Navigation<br><br>as Disponent Owners | 4. Charterers and place of business (state full type and address) (Cl. 1)<br>Sundarsons Nigeria, Ltd. |
| 5. Vessel's name (Cl. 1)  mv CRUISER<br>Flag / built / class) Panama 1983 Nationde<br>NT / GT: 16,904/9,834<br>Summer DWT: See Clause 28 | 6. First layday date (Cl. 6)  12th August 2006<br>Cancelling date (Cl. 6)  22nd August 2006 |
| | 7. Present position / expected ready to load (Cl. 1)<br>trading |
| 8. Loading port(s) (Cl. 3)<br>Kakinada | 9. Advance notices (Cl. 7)<br>at load port to |
| a) Always afloat (*)  b) "safely aground" (*) | |
| 10. Discharging port(s) (Cl. 3)<br>1 safe berth Lagos plus 1 sb Port Harcourt | |
| a) Always afloat (*)  b) "safely aground" (*) | at discharging port number of safe nr. 7 |
| 11. Cargo nature and quantities (Cl. 2) | 12. Freight rate (Cl. 4)<br>USD 69.50 per metric ton free in and out stowed<br>basis 1 load/2 discharge |
| b) in bags (*)  b) Maximum in bags for stowage (*) | |
| 13. Freight rate (payment terms currency and method of payment, beneficiary<br>and bank account) (Cl. 4)<br>See Clause 47 | 14. Loading rate (Cl. 6)<br>3000 metric tons pwwd shex. See also Clause 6 |
| | 15. Discharging rate (Cl. 6)<br>1000 metric tons pwwd shex. See also Clause 6. |
| | 16. Demurrage / Despatch money (Cl. 8)<br>USD 8,000  p/per / h/deduce |
| 17. Agents at loading port(s) (Cl. 13)<br>See Clause 52 | 18. Agents at discharging port(s) (Cl. 13)<br>See Clause 52 |
| 19. Extra insurance, maximum: (Cl. 14) | 20. Brokerage commission and to whom payable (Cl. 16)<br>1.25% to Anglomar Shipping Ltd. to be deducted from freight |
| 21. Address Commission (Cl. 16)<br>2.5% to Charterers to be deducted from freight | a) Deductible (*)  b) Non-deductible (*) |
| 22. Numbers of the additional clauses covering special provisions, if any agreed<br>Additional clauses from clause 29 to clause 66 are deemed to be incorporated in this Charter Party | |

It is mutually agreed that this Charter Party shall be performed subject to the conditions contained herein consisting of PART I and PART II including Additional clauses if any agreed and stated in Box 22. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further.

| For the Owners | For the Charterers |
|---|---|

(*) Delete as appropriate.  (see reverse)  alternative (c) to apply.

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the document must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. SNCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and the computer generated document.

**ORIGINAL**

PART II

"SYNACOMEX 2000" Continent Grain Charterparty

1. Owners, Charterers

2. Loading Port(s) and Cargo

3. Discharging Port(s)

4. Freight

5. Loading and Discharging

6. Layays, Cancelling

7. Vessel's Positions , Notices

8. Laytime

04-APR-2007  17:46   FROM  JACKSON PARTON              TO  0012129835946        P.24/83

# ORIGINAL

**PART II**

**"SYNACOMEX 2000" Continent Grain Charterparty**

| | |
|---|---|
| when ready. | 112 |
| Only when the loading and/or discharging berth is | 113 |
| unavailable, or Shippers or Receivers are not ready to load/ | 114 |
| discharge Master may warrant out the Vessel to be all | 115 |
| respects ready and may tender notice of readiness to load | 116 |
| and/or discharge from any usual waiting place, whether in | 117 |
| port or not, whether in berth or not, whether in free pratique or not, | 117 |
| whether customs | |
| cleared or not. | 118 |
| Laytime shall commence at 14.00-13.00 hours if notice of | 119 |
| readiness is load and/or discharge is validly tendered at or | 120 |
| before 12.00 hours and at 06.00 hours on the next working | 121 |
| day if notice of readiness is validly tendered after 12.00 | 122 |
| hours. Time used before commencement of laytime shall | 123 |
| not count. At loading, port Laytime shall not count between 12.00 | 124 |
| hours on | |
| Saturdays or 12.00 hours on days preceding a Holiday and | 125 |
| 08.00 hours on Monday or the following working day, even if used. | 126 |
| At discharging port(s) laytime shall not count between 17.00 | |
| hours on Friday or 17.00 hours on the day preceding Holiday and | |
| 08.00 hours on Monday or the following working day, even if used. | |
| | |
| which does not form a mutual time of call count. | 127 |
| Any delays caused by ice, floods, quarantine, or by cases | 128 |
| of "force majeure" and not count as laytime unless the | 129 |
| Any delays caused by ice, floods, quarantine, or cases of "force | 130 |
| majeure" shall not count as laytime unless | |
| Vessel is already on demurrage. Once on demurrage always on | |
| demurrage but Charter Party exemptions always to apply to the gear | |
| breakdown or crew and/ or officers strike, failure to pay any | |
| disbursement accounts for Owners' account etc. | |
| When Master has tendered notice of readiness to load or | 131 |
| discharge from a waiting place and Vessel is subsequently | 132 |
| found unready in application of the above provisions, laytime | 133 |
| of time on demurrage shall not count from the time the Vessel | 134 |
| is rejected until the time she is accepted. Additionally, any | 135 |
| actual time lost on account of Vessel's obtaining free pratique | 136 |
| or customs clearance shall not count as laytime or time on | 137 |
| demurrage. | 138 |
| At second of subsequent port(s) of loading or discharging, | 139 |
| laytime or time on demurrage shall resume counting from | 140 |
| Vessel's arrival at loading or discharging berth, if available, | 141 |
| or from Vessel's arrival at a usual waiting place, if berth is | 142 |
| unavailable. | 143 |
| At all ports any time lost shifting from waiting place to berth | 144 |
| shall not count as laytime or as time on demurrage. | 145 |
| | |
| **9. Demurrage, Despatch Money** | 146 |
| Demurrage is payable by Charterers at the rate stated in | 147 |
| Box 18 USD 8,000 per day pro rata, half despatch laytime saved | 148 |
| both ends per day of 24 consecutive hours or pro rata. | |
| Owners shall pay to Charterers despatch money for laytime | 149 |
| saved in loading/discharging at the rate stated in Box 18 | 150 |
| per day of 24 consecutive hours or pro rata. | 151 |
| | |
| **10. Seaworthy Trim** | 152 |
| If ordered to be loaded or discharged at more than one | 153 |
| berth and/or port, the Vessel is to be left in seaworthy trim | 154 |
| to Masters reasonable satisfaction for the passage between | 155 |
| berths and/or ports at Shippers'/Charterers'/Receivers' | 156 |
| expense, and time used for placing Vessel in seaworthy | 157 |
| trim shall count as laytime or time on demurrage. | 158 |
| | |
| **11. Fumigation See Clause 37** | 159 |
| Charterers have the right to fumigate the cargo on board | 160 |
| at loading and discharging port(s) or places on receival | 161 |
| their own and expense. Charterers are responsible for | 162 |
| securing that Officers and Crew do not exceed ... of... | 163 |
| on board the cargo compartments after the fumigation period | 164 |
| exposed to any health hazard upon. Charterers | 165 |
| undertake to pay Owners all necessary expenses incurred | 166 |
| because of the fumigation including any delay that may result | 167 |

| | |
|---|---|
| as laytime or time on demurrage. When fumigation has | 168 |
| been effected at loading port and has been certified by | 169 |
| proper authority to be a competent authority, bill of lading | 170 |
| shall not be issued to Master to receiver or Receiver having | 171 |
| been deprived in the cargo prior to such fumigation. | 172 |
| | |
| **12. Lights and Gear** | 173 |
| Whenever required, Vessel shall supply free use of lights | 174 |
| as on board but sufficient to carry on night work. | 175 |
| Provided described as geared, Vessel, whenever required, | 176 |
| shall supply free use of all cargo handling gear on board, in | 177 |
| good working order, with the necessary power, and of | 178 |
| runners, ropes and slings as on board. Shore hands shall | 179 |
| be used to drive the gear, at Shippers'/Charterers'/ | 180 |
| Receivers' account. Any time actually lost on account of | 181 |
| breakdown of Vessel's gear shall not count as laytime or | 182 |
| time on demurrage and any stevedore standby time charges | 183 |
| incurred thereby shall be for Owners' account. The Gear's / Crane's | 184 |
| breakdown then laytime not to count but always on prorata basis. | |
| | |
| **13. Agencies** | 185 |
| At loading port, Vessel shall be consigned to the Agents | 186 |
| designated in Box 19. See Clause 62 | 187 |
| At discharging port, Vessel shall be consigned to the Agency | 188 |
| designated in Box 19. See Clause 62 | 189 |
| | |
| **14. Extra Insurance** | 190 |
| Any Extra Insurance on cargo due to Vessel's age and/or flag | 191 |
| and/or class and/or ownership shall be for Charterers' account | 192 |
| and amount not... for liability of | 192 |
| ...Box 17... and such extra insurance shall be | |
| covered by Charterers for Own and... account and shall be | 194 |
| deducted from estimate of freight | 195 |
| | |
| **15. Brokerage** | 196 |
| A brokerage commission as stated in Box 21 on the gross | 197 |
| amount of freight, deadfreight and demurrage earned, is | 198 |
| due to the party(ies) designated in Box 20 and is deductible | 199 |
| from same unless "non-deductible" has been specifically | 200 |
| agreed. | 201 |
| | |
| **16. Address Commission** | 202 |
| An address commission as stated in Box 21 on the gross | 203 |
| amount of freight, deadfreight and demurrage earned is | 204 |
| due to Charterers and is deductible from freight, deadfreight | 205 |
| and demurrage. | 206 |
| | |
| **17. ISM Clause** | 207 |
| From the date of coming into force of the International Safety | 208 |
| Management (ISM) Code in relation to the Vessel and | 209 |
| thereafter during the currency of this Charter Party, the | 210 |
| Owners shall procure that both the Vessel and "the | 211 |
| Company" (as defined by the ISM Code) shall comply with | 212 |
| the requirements of the ISM Code. Upon request the | 213 |
| Owners shall provide a copy of the relevant Document of | 214 |
| Compliance (DOC) and Safety Management Certificate | 215 |
| (SMC) to the Charterers. | 216 |
| Except as otherwise provided in this Charter Party, loss, | 217 |
| damage, expense or delay caused by failure on the part of | 218 |
| the Owners or "the Company" to comply with the ISM Code | 219 |
| shall be for the Owners' account. | 1.. |
| | |
| **18. Bills of Lading** | 221 |
| The Master is to sign Bills of Lading as presented without | 222 |
| prejudice to the terms, conditions and exceptions of this | 223 |
| Charter Party. If the Master delegates the signing of Bills of | 224 |
| Lading to his Agents, but always to be in a strict conformity with | 225 |
| Mate's Receipts he shall give them authority to do so | |
| in writing; copy of which is to be furnished to Charterers. | 226 |
| When Bills of Lading marked "Freight prepaid" are required, | 227 |
| See clause 47. | |
| items shall be released by Owners... mandatory, upon receipt | |

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any intention or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall prevail. SNACC and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

04-APR-2007  17:47   FROM  JACKSON PARTON        TO  0012129835946        P. 25/83

**ORIGINAL**

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. SYNCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

4

04-APR-2007  17:49  FROM  JACKSON PARTON                    TO  0012129835946          P.26/83
FROM :                          FAX NO. : 65 63244450        Dec. 06 2005 04:09PM P5

## ORIGINAL

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

carrier or his Agents may deem sufficient to cover the
estimated contribution of the goods and any salvage and
special charges thereon shall, if required, be made by
the goods, shippers, consignees or owners of the goods
to the carrier before delivery"
and the Charterers shall procure that all Bills of Lading issued
under this Charter Party shall contain the same Clause.

26. Both-to-Blame Collision Clause
If the liability for any collision in which the Vessel is involved
while performing this Charter Party falls to be determined
in accordance with the laws of the United States of America,
the following Clause shall apply:
"If the ship comes into collision with another ship as a result
of the negligence of the other ship and any act, neglect or
default of the master, mariner, pilot or the servants of the
carrier in the navigation or in the management of the ship,
the owners of the goods carried hereunder will indemnify
the carrier against all loss or liability to the other or non-
carrying ship or her owners in so far as such loss or liability
Represents loss of or damage to or any claim whatsoever
of the owners of the said goods, paid or payable by the
other or non-carrying ship or her owners to the owners of
the said goods and set off, recouped or recovered by the
other of non-carrying ship or her owners as part of their
claim against the carrying ship or carrier.
The foregoing provisions shall also apply where the...
Owners, Operators or those in charge of any ship or ships
or objects other than, or in addition to, the colliding ships or
objects are at fault in respect to a collision or contact"
and the Charterers shall procure that all Bills of Lading issued
under this Charter Party shall contain the same Clause.

27. War risks ("Voywar 1993")
a) For the purpose of this Clause, the words:
(i) "Owners" shall include the shipowners, bareboat
charterers, disponent-owners, managers or other operators
who are charged with the management of the Vessel, and
the Master; and
(ii) "War Risks" shall include any war (whether actual or
threatened), act of war, civil war, hostilities, revolution,
rebellion, civil commotion, warlike operations, the laying of
mines (whether actual or reported), acts of piracy, acts of
terrorists, acts of hostility or malicious damage, blockades
(whether imposed against all vessels or imposed selectively
against vessels of certain flags or ownership, or against
certain cargoes or crews or otherwise howsoever), by any
person, body, terrorist or political group or the Government
of any state whatsoever, which, in the reasonable judgement
of the Master and/or the Owners, may be dangerous or are
likely to be or to become dangerous to the Vessel, her cargo,
crew or other persons on board the Vessel.
b) If at any time before the Vessel commences loading, it
appears that, in the reasonable judgement of the Master
and/or the Owners, performance of the Charter Party, or
any part of it, may expose, or is likely to expose, the Vessel,
her cargo, crew or other persons on board the Vessel to
War Risks, the Owners may give notice to the Charterers
cancelling this Charter Party, or may refuse to perform such
part of it as may expose, or may be likely to expose, the
Vessel, her cargo, crew or other persons on board the Vessel
to War Risks, provided always that if this Charter Party
provides that loading or discharging is to take place within a
range of ports, and at the port or ports nominated by the
Charterers the Vessel, her cargo, crew, or other persons
onboard the Vessel may be exposed, or may be likely to be
exposed, to War Risks, the Owners shall first require the
Charterers to nominate any other safe port which lies within

the range for loading or discharging, and may only cancel
this Charter Party if the Charterers shall not have nominated
such safe port or ports within 48 hours of receipt of notice of
such requirement.
c) The Owners shall not be required to continue to load
cargo for any voyage, or to sign Bills of Lading for any port
or place, or to proceed or continue on any voyage, or on
any part thereof, or to proceed through any canal or
waterway, or to proceed to or remain at any port or place
whatsoever, where it appears, either after the loading of
the cargo commences, or at any stage of the voyage
thereafter before the discharge of the cargo is completed,
that, in the reasonable judgement of the Master and/or the
Owners, the Vessel, her cargo (or any part thereof), crew
or other persons on board the Vessel (or any one or more
of them) may be, or are likely to be, exposed to War Risks
If it should so appear, the Owners may by notice request
the Charterers to nominate a safe port for the discharge of
the cargo or any part thereof, and if within 48 hours of the
receipt of such notice, the Charterers shall not have
nominated such a port, the Owners may discharge the cargo
at any safe port of their choice (including the port of loading)
in complete fulfilment of the Charter Party. The Owners shall
be entitled to recover from the Charterers the extra expenses
of such discharge and, if the discharge takes place at any
port other than the loading port, to receive the full freight as
Though the cargo had been carried to the discharging port
and if the extra distance exceeds 100 miles, to additional
freight which shall be the same percentage of the freight
contracted for as the percentage which the extra distance
represents to the distance of the normal and customary
route, the Owners having a lien on the cargo for such
expenses and freight
d) If at any stage of the voyage after the loading of the
cargo commences, it appears that, in the reasonable
judgement of the Master and/or the Owners, the Vessel,
her cargo, crew or other persons on board the Vessel may
be, or are likely to be, exposed to War Risks on any part of
the route (including any canal or waterway) which is normally
and customarily used in a voyage of the nature contracted
for, and there is another longer route to the discharging
port, the Owners shall give notice to the Charterers that
that route will be taken. In any event the Owners shall be
entitled, if the total extra distance exceeds 100 miles, to
additional freight which shall be the same percentage of
the freight contracted for as the percentage which the extra
distance represents to the distance of the normal and
customary route.
e) The Vessel shall have liberty:
(i) to comply with all orders, directions, recommendations
or advice as to departure, arrival, routes, sailing in convoy,
ports of call, stoppages, destinations, discharge of cargo,
delivery or in any way whatsoever which are given by the
Government of the Nation under whose flag the Vessel sails,
or other Government to whose laws the Owners are subject,
or any other Government which so requires, or any body or
group acting with the power to compel compliance with their
orders or directions;
(ii) to comply with the orders, directions or recom-
mendations of any war risks underwriters who have the
authority to give the same under the terms of the war risks
insurance;
(iii) to comply with the terms of any resolution of the Security
Council of the United Nations, any directives of the European
Community, the effective orders of any other Supranational
body which has the right to issue and give the same, and
with national laws aimed at enforcing the same to which
the Owners are subject.

This document is a computer generated SYNACOMEX 2000 form edited by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any modification or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of the document which is not clearly visible, the text of the original SYNACOMEX document shall apply. SIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

5

04-APR-2007 17:49   FROM  JACKSON PARTON                    TO  0012129835946          P.27/83
FROM :                          FAX NO. : 65 63244450              Dec. 06 2006 04:27PM P6

# ORIGINAL

PART II
"SYNACOMEX 2000" Continent Grain Charterparty

| | |
|---|---|
| the Owners are subject, and to obey the orders and | 494 |
| directions of those who are charged with their enforcement; | 495 |
| (iv) o discharge at any other port any cargo or part thereof | 496 |
| which may render the Vessel liable to confiscation as a | 497 |
| contraband carrier. | 498 |
| (v) to call at any other port to change the crew or any part | 499 |
| thereof or other persons on board the Vessel when there is | 500 |
| reason to believe that they may be subject to internment, | 501 |
| imprisonment or other sanctions. | 502 |
| (vi) where cargo has not been loaded or has been | 503 |
| discharged by the Owners under any provisions of this | 504 |
| Clause, to load other cargo for the Owners' own benefit | 505 |
| and carry it to any other port or ports whatsoever, whether | 506 |
| backwards or forwards or in a contrary direction to the | 507 |
| primary or customary route. | 508 |
| (f) if in compliance with any of the provisions of sub-clauses | 509 |
| (b) to (f) of this Clause anything is done or not done, such | 510 |
| shall not be deemed to be a deviation, but shall be | 511 |
| considered as due fulfilment of the Charter Party. | 512 |
| | 513 |
| 28. Arbitration See clause 49 | 514 |
| Any dispute arising out of the present contract shall be | 515 |
| referred to Arbitration of Chambre Arbitrale Maritime de | 516 |
| Paris - 16 rue Daunou - 75002 Paris. | 517 |
| The decision rendered according to the rules of Chambre | 518 |
| Arbitrale and according to French law shall be final and | 519 |
| binding upon both parties. The right of both parties to refer | 520 |
| any disputes to arbitration expires twelve months after | 521 |
| completion of discharge or, in case of cancellation of non- | 522 |
| performance, twelve months after the cancelling date as per | 523 |
| Clause 5 of this C/P or such date of cancellation whichever is | 524 |
| the later. Where this provision is not complied with the claim | 525 |
| shall be deemed to be waived and absolutely barred. | 526 |

This document is a computer generated SYNACOMEX 2000 form, printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. SINCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

6

# SKOUFALOS AFFIDAVIT

# MAY 21, 2008

# EXHIBIT D

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/21/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X

CRUISER SHIPPING PTE LTD. and
UNIVERSAL NAVIGATION PTE LTD.,

          Plaintiffs,

  -against-

SUNDERSONS LTD., MILAN NIGERIA LTD.,
SIMRAN MEHER LTD. and VALECHHA
HOLDINGS LIMITED,

          Defendants.
-----------------------------------------------X

07 CV 4036 (JGK)

**STIPULATION AND ORDER OF
DISCONTINUANCE**

WHEREAS, the Plaintiffs, CRUISER SHIPPING PTE LTD. and UNIVERSAL

NAVIGATION PTE LTD., ("Plaintiffs") commenced this action on or about May 23, 2007, by

filing a Summons and Verified Complaint in the United States District Court for the Southern

District of New York; and

WHEREAS, on application of the Plaintiffs, Process of Maritime Attachment and

Garnishment was issued on or about May 24, 2007 pursuant to Supplemental Rule B directing

the restraint of assets of defendants SUNDERSONS LTD. and MILAN NIGERIA LTD. up to

the amount of $417,614.40; and

WHEREAS, on or about June 21, 2007 and September 6, 2007, Plaintiffs filed an

Amended Complaint and a Second Amended Complaint, adding as defendants in this action,

SIMRAN MEHER LTD. and VALECHHA HOLDINGS LIMITED; and

WHEREAS, on application of the Plaintiffs, Process of Maritime Attachment and

Garnishment was issued on or about September 7, 2007 pursuant to Supplemental Rule B

directing the restraint of assets of defendants, SUNDERSONS LTD., SIMRAN MEHER LTD.,

VALECHHA HOLDINGS LTD. and MILAN NIGERIA LTD. ("Defendants"), up to the amount of $417,614.40; and

WHEREAS, pursuant to this Court's Second Amended Ex Parte Order of Maritime Attachment and Garnishment, on or about October 4, 2007, Plaintiffs attached property of Defendant MILAN NIGERIA LTD. in the amount of $417,614.40 (" the Attached Funds") in the form of an electronic funds transfer at garnishee Standard Chartered Bank; and

WHEREAS, the Attached Funds remain under attachment by garnishee Standard Chartered Bank; and

WHEREAS, defendant MILAN NIGERIA LTD. filed an Answer and Counterclaim in this action on or about November 15, 2007 and therein demanded countersecurity in the amount of $158,472.73; and

WHEREAS, pursuant to this Court's order, Plaintiffs have provided the demanded countersecurity in the form of a Letter of Undertaking from Plaintiffs' protection and indemnity club, The South of England Protection and Indemnity Association (Bermuda) Limited (the "LOU"); and

WHEREAS, arbitration proceedings to resolve the underlying dispute are currently pending in London; and

WHEREAS, Plaintiffs and Defendants agree and concur that the Attached Funds should remain in the custody of garnishee Standard Chartered Bank; and

WHEREAS, Plaintiffs and Defendants agree and concur that this Honorable Court should retain jurisdiction over the Attached Funds; and

WHEREAS, the parties hereto contemplate that it may become necessary to obtain an Order from this Court to release the Attached Funds pursuant to a Final Unappealable Award

2

issued by a properly constituted London Arbitration Tribunal in the underlying London arbitration; and

WHEREAS, Defendants have reserved the right, in the event they become reasonably insecure about The South of England Protection and Indemnity Association (Bermuda) Limited's ability to honor its financial obligations under the LOU, to obtain an Order from this Court directing plaintiffs to post alternate countersecurity consistent with the terms of the LOU; and

WHEREAS, Plaintiffs and Defendants agree and concur that this action should be discontinued without prejudice and without costs to either party;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:

1.     This action is hereby discontinued without prejudice and without costs.

2.     The Plaintiffs or Defendants may re-file this action, without need to pay an additional filing fee, within 120 days from the entry of a Final Unappealable Award of a properly constituted London Arbitration Tribunal in order to request an Order directing the release of the Attached Funds pursuant to such Award, or to request any other relief necessary to effect the disposition of the Attached Funds.

3.     Defendants may, in the event they become reasonably insecure about the South of England's ability to honor its financial obligations under the LOU, re-file this action, without need to pay an additional filing fee, to request an Order directing plaintiffs to post alternate security consistent with the terms of the LOU.

4.     The Attached Funds shall remain under attachment with garnishee Standard Chartered Bank and this Court shall retain jurisdiction over the Attached Funds and the LOU to the extent provided by its terms; provided however that the Attached Funds and/or the LOU may

3

be released without further order of this Court pursuant to the joint written instructions of the

parties hereto, or their authorized counsel.

Dated: New York, New York
       April 7, 2008

BROWN GAVALAS & FROMM LLP
Counsel for Plaintiffs


Peter Skoufalos (PS 1015)
355 Lexington Avenue
New York, New York 10017
(212) 983-8500 – phone
(212) 983-5946 – fax

BLANK ROME LLP
Counsel for Defendants


Thomas H. Belknap, Jr. (TB 3188)
405 Lexington Avenue
New York, New York 10174-0208
(212) 885-5270 – phone
(718) 332-3795 – fax


SO ORDERED:

_____
U.S.D.J.

4/18/08

4

# SKOUFALOS AFFIDAVIT

# MAY 21, 2008

# EXHIBIT E



Make BusyTrade Your Homepage | Add to Favorites

Home | Login | Sign Up | Inquiry Basket(0) | Help | China Site | Other Sites ⊞

BusyTrade.com
Busy with Trade!

Selling Leads | Buying Leads | Products | Companies

Select Categories          Search

Home    For Buyers    For Sellers         Services    Tradeshows    Busy Times    Community         Login | Sign Up

Home » For Buyers » Milan Nigeria Limited » About Us

 Milan Nigeria Limited

| Home | Products | Selling Leads | About us | Contact us |

Company Profile
Inquiry
Leave a Message

### About Us



Milan Group & associate companies cover a wide range of products with interest in Shipping, Transport, Hotel, Imports, & real estate through all branches in all major cities in Nigeria. We have recently started exports of Cocoa Beans, Cashew Nuts, Split and dried Ginger & Sesame seeds, gum arabic and other agro commodities. we also export bitumin and residual Paraffin.For more details kindly log onto our web site:www.milannigeria.com

### Company Profile

| | |
|---|---|
| Company name | Milan Nigeria Limited |
| Product/Services | We provide: Would like to sell MG-1 Coca Beans<br>We require: |
| Company Address | 243/B, Kofo Aboyomi, Victoria Island, Lagos. |
| Time to Join BusyTrade | Aug 06, 2007 |
| QA/QC | 0 |
| OEM Service | NO |


Inquire Now
To Receive Quick Feedback!

Hot Product                                                                     More

| | | | | |
|---|---|---|---|---|
| Sea Weed | Red Seaweed | Yellow Flowers | Fruit Flowers | Blue Flowers |
| Fresh Flowers | Fresh Cut Flowers | Ginger Powder | Skate Wing | Scented Flowers |
| Carrot Powder | Fruits Flowers | Extract Powder | Seed Powder | Box Vans |

**Traders' Picks**

PHMB          mobile crane
copper fitti... wire rope
steam ster... nickel wire
Resistance... Rattan Fur...
Automatic ... slewing be...
Rattan Fur... Restaurant...
swing doors  traffic doors

Ads by Google

**Perforated Meta**
**China**

Specialize in Perforated Me
Products, High Quality, Low
Price

www.perforated-metal.org

**Lagos Nigeria Hotel**
Visiting Nigeria & Need a Hotel?
Lagos Nigeria Hotel Bargains!
www.NexTag.com/Hotels

**Copper Sheet, Bar & Rod**
Ships next day - all copper size
minimums. Order online.
www.StormCopper.com

Ads by Go

Home | For Buyers | For Sellers | iBusyTrade | Tradeshows | BusyTimes | Community
About Us | Partnership | Services | Payment | Contact Us | Hot Products | Resources | Site Map | Help
International Sites: Global | China | India | Mexico | Brazil | HongKong | Japan | Bangladesh

Terms & Conditions - Disclaimer Copyright © 1999 - 2008 BusyTrade.Com Ltd. All rights reserved. ICP No.SH B2-20070114

## Milan Nigeria Limited
**Nigeria - Lagos: Manufacturer / Trading Company / Importer / Exporter**

Ads by Google  V  V

▸ Home
▸ Products
▸ Trade Leads
▸ Contact Us

Website Template, Hosting
and Newsletter Manager,
Provided by
*eAllianceTrading*, part of an
International B2B Network,
currently with 220207
members and 1,600,000+
visitors viewing 4,000,000+
pages each month.

Visitors: 45

* Business Hosting
* Business Website
* Business Leads
--> More on Visitory.com

### Welcome to Milan Nigeria Limited website.

Milan Group is two decades old exceeding investment of 25 Billions
and turnover of 250 Billions. It is known as efficient Business Group.
Has Expertise in:
Commodity Trading,
Consumer Marketing,
Ship Chartering,
Hotel industry.............

*We are regularly **Selling**: cocoa beans, dried split ginger, sesame
seeds, raw cashew nuts.*

### Main Business Activities
Vegetables - Live Trees & Plants
Vegetables - Milling Industry Products
Vegetables - Oil Seeds, Grains & Plants
Vegetables - Lac, Gums, Resins, ETC

### Our Products



-->> More Products

▮ ▮ Nigeria

**Newsletter**

From time to time we
are sending out
newsletters about our
products / promotions
to our existing and
future clients. If you
would like to be
informed, please signup
below.

**Your E-Mail Address:**



Milan Official Site
Get Photos, Specs
& More on the
Mercury Milan
mercuryvehicles.com/milan

Ads by Google

**US Customs'
Import Data**

Find buyers/sellers
of Products Find
who makes what
and where

www.zepol.com

Phone: 234-1-4619702    Fax: 234-1-2626339

**Copyright © 2005 - 2007 Milan Nigeria Limited**
Valued Member of TradeHolding.com B2B Network since 2007. Reach worldwide **1,600,000 Business Owners & Decision Makers**
every month, TradeHolding.com B2B Network is **The Biggest Business to Business Network** used everyday by tens of thousands of
buyers and sellers from all over the world.
Powered by TradeHolding.com B2B Network and TradeHolding.org Business Links



**B2B TradeHolding.com**
International B2B Network

Target Country: All Countries    [Offers]

USA Products, USA Companies, USA Trade Leads
UK Products, UK Companies and UK Trade Leads

[ Companies ]
[ Trade Leads ]
[ Products ]

**Login Now!**  Forgot Password? Or have a Login Problem with your account and Need Help? | FREE BUSINESS WEBSITE: Register Now!
All Buyers | Auto Parts | Battery | Cellular | Cement | Electronics | Iron Ore | Mobile Phones | Rubber | Textile | Wood | All Sellers
>>> Hot Products - Made in China , USA, UK and More, NEW! Canada, India, Italy, Australia, Germany

| Home | Free Benefits | Companies | Trade Leads | Products | Biz Keywords | My Account |

Home -> Company Directory -> Milan Nigeria Limited

## B2B TradeHolding.com - View Company - Milan Nigeria Limited

🔍 Quick Search  🔍 Home  🔍 Site Map  🔍 Terms of Service  🔍 Help

**Agents  Buying Offices  Distributors / Wholesalers  Importers / Exporters  Manufacturers  Trading Companies**

**TOP Member**
4 Trade Leads posted
1 Product on sale

**Milan Nigeria Limited**

[ Contact Now! ]
**Milan Nigeria Limited**
**TOP Member**
4 Trade Leads posted
1 Product on sale

Members Login

E-Mail Address:

Password:

☐ Store my password
[ Login Now ]

## Create your own company page now!

*Milan Nigeria Limited*

Milan Group is two decades old exceeding investment of 25 Billions and
turnover of 250 Billions. It is known as efficient Business Group.
Has Expertise in:
Commodity Trading,
Consumer Marketing,
Ship Chartering,
Hotel industry..............
*Main Products & Services we Sell: cocoa beans, dried split ginger, sesame
seeds, raw cashew nuts.*

**Milan Official Site**
Get Photos, Specs
& More on the
Mercury Milan
mercuryvehicles.com/mila

Forgot password?
Can't login?

Not a member?
Register NOW!



Business News

Browse by Continent

Advertisement
**FREE Industrial Magazines**

**Contact Person:** Ajit Gaonkar
**Job Title:** Head Exports
**Location:** Nigeria - Lagos
Companies from Nigeria
Trade Leads from Nigeria
Products from Nigeria

**Classification(s):** Vegetables - Lac, Gums, Resins, ETC
Vegetables - Live Trees & Plants
Vegetables - Milling Industry Products
Vegetables - Oil Seeds, Grains & Plants

**Primary Business Type(s):** Manufacturer
*More Manufacturers...*
Trading Company
*More Trading Companies...*
Importer / Exporter
*More Importers / Exporters...*

Contact Information

## Join Now or Login
## to contact Milan Nigeria Limited!

What's New?

**Related Site Sections:**
Buy Sell Trade Leads: Vegetables - Lac, Gums, Resins, ETC
Buy Sell Trade Leads: Vegetables - Live Trees & Plants
Buy Sell Trade Leads: Vegetables - Milling Industry Products
Buy Sell Trade Leads: Vegetables - Oil Seeds, Grains & Plants
Biz Keywords: Vegetables - Lac, Gums, Resins, ETC
Biz Keywords: Vegetables - Live Trees & Plants
Biz Keywords: Vegetables - Milling Industry Products
Biz Keywords: Vegetables - Oil Seeds, Grains & Plants
Product Showroom: Vegetables - Lac, Gums, Resins, ETC
Product Showroom: Vegetables - Live Trees & Plants
Product Showroom: Vegetables - Milling Industry Products
Product Showroom: Vegetables - Oil Seeds, Grains & Plants
Latest Business News

**More:**
Latest
2008
2007
2006
2005
2004
2003
2002

> Companies
> Products
> Trade Leads
> Buying Requests
> Selling Offers
> Opportunities

**Quick Links**
Home
Browse by Country
Browse Trade Leads
Browse Companies
Browse Products
Browse Biz Keywords
ODP Directory
Partner / Trade Links

**Advertisement**

**View More Companies**

Search For:
Companies          [_____]  [Search]
          B2B TradeHolding.com  ⦿ or ○ and ○ exact phrase



* Domain Names
* Credit Cards
* Business Credit
--> More on Visitory.com



------ Quick ------
**Advertisement**
*Have a Website?*

**Regional Resources**

US, Canada Buyers
UK, Europe Buyers
South America Buyers
China, Asia Buyers
Australia Buyers

**More Resources**

[ Companies ]
[ Trade Leads ]
[ Products ]
[ Websites ]

> **Free Buyer Seller Website** NEW! Import - Export USA Products > Select: Business  [ Add Your Website ]

🏳 Made in USA          🏳 Made in Canada          🏳 Made in UK          🏳 Made in China
NEW! Made in Europe     NEW! Made in America      NEW! Made in Asia      NEW! Made in Africa

**Business Opportunities** | Apparel | Beauty | Furniture | Health Care | MP3, DVD, VCD | Nike Shoes | Phones | Sugar | Textile | Wire
DMOZ Open Directory - Reference US, Canada, UK - World Business News - Worldwide Exporters, Sellers - Countries US, Canada, UK, Europe

**What is TTL?** Targeted Trade Leads **is a new optional online e-mail service we provide to** Wholesale Suppliers **on demand.
By using this service you can easily send tens, hundreds or even thousands of buy sell offers to importer exporter
companies, directly to their Inbox! You can send TTL to** Importers Exporters **by Industrial Categories.**
bearings | chemicals | coffee | fat, oil | foods | handicraft | hms | meat | metals | steel | stone, jewelry, gold | urea | vegetables



NEW!
**B2B Trade
Marketplace**

**Step 1:** Select countries / country for your targeted buying - selling offer e-mails.
**Step 2:** Select industrial category / categories for your import - export demands.
**Step 3:** View how many companies will receive it based on your selections.
**Step 4:** Enter your offer you wish to email to portable audio, video suppliers, buyers.
**Step 5:** Receive confirmation of delivered Targeted Trade Leads by e-mail.

**Finally!** Just expect the replies immediately in your mailbox! Even by phone or fax.

🅿
**Premium
Business
Opportunities**

- **Add Products!** **Create a Product Showroom to advertise Your Products with colourful photos!**

Looking for Trade Finance or extra business funding? Thinking of Buying or Selling a Business? Or do you just need general Business Advice?

**BUSINESS FINANCE SERVICES**
CLICK HERE for more info..

**ONLINE INSURANCE QUOTES**
CLICK HERE to get a quote

**LOW COST INSTANT LOANS!**
CLICK HERE to apply online

Biz Keywords >>> A B C D E F G H I J K L M N O P Q R S T U V W X Y Z >>> Hot Products Made in Ocenia , USA, UK NEW!
North America US United States, Canada, EU Countries & Europe UK United Kingdom, China, Australia, Africa NEW! Air Jordan Shoes
NEW! **Sample Search Result Page:** Buyers, sellers and manufacturers of industrial products, exporters and importers, trading and
sourcing companies, buying and selling offices, distributors, traders, brokers, wholesalers, providers, nike air jordan shoes
UK Exporters, USA Sellers, Canada Buyers, US Importers, Products to Import and Export - Online Trade B2B: Air Jordan Shoes , Pharmaceuticals

**Company Directory - Importers & Exporters by Industry:** Animal Products, Automobile, Base Metals & Articles, Chemicals,
Computers & Software, Construction, Consumer Electronics, Energy & Environment, Fats & Oils, Food, Footwear & Headgears, Health & Beauty,
Hides, Leather & Furs, Home Supplies, Industrial Supplies, Machinery & Electronics, Mineral Products, Miscellaneous, Plastics & Rubbers, Services,
Stone, Glass & Jewelry, Telecommunications, Textiles, Transportation, Vegetables, Wood

Home - Importers & Exporters - Products on Sale - Buyers & Sellers - About Us - Terms of Service - FAQ - Need Help? - Contact Us

© Copyright 2002-2008, B2B.TradeHolding.com - All Rights Reserved. Provided Free Website & Member Benefits - Site Map

‹ **Quick Guide**          ‹ **B2B Marketplace, Company Directory, Trade Leads, Biz Keywords, Product Catalogs**          ‹ **Top**

Statistics: Companies: 220,100+, Trade Leads: 132,800+, Products: 45,200+, Contacts / Replies: 728,100+
There are currently **3131** users online browsing our B2B network. 12:54 GMT, Tuesday, May 20, 2008
Privacy Policy

All Trade Leads / Offers / Products / Company Profiles / Images and other user-posted contents are posted by the user and B2B TradeHolding.com
and TradeHolding.com B2B Network shall not be held liable for any such content. However, TradeHolding.com B2B Network respects the intellectual
property, copyright, trademark, trade secret or any other personal or proprietary third party rights and expects the same from others. For concerns,
please contact us.