# SKOUFALOS AFFIDAVIT
# MAY 21, 2008
# EXHIBIT G

**CONTINENT GRAIN CHARTERPARTY**
Code name: "SYNACOMEX 2000"
Adopted PARIS 1957 by SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES
amended 1960, 1974, 1990 and 2000 in agreement with COMITÉ CENTRAL DES ARMATEURS DE FRANCE
in cooperation with Chambre Arbitrale Maritime de Paris and the French Chartering and S. & P. Brokers' Association

PART I

| | |
|---|---|
| 1. Shipbroker(s)<br>ABACUS SHIPPING LTD<br>9 RITZ PARADE<br>WESTERN AVENUE<br>LONDON W5 3RA | 2. Place and date of Charter Party<br>LONDON 08TH AUGUST 2007 |
| 3. Owners and place of business (state full style and address) (Cl. 1)<br>ANGLOMARINE SHIPPING LTD, 18 MANSELL STREET, E1 8AA, LONDOND, UNITED KINGDOM | 4. Charterers and place of business (state full style and address) (Cl. 1)<br>CONTI AGRO NIGERIA LIMITED |
| 5. Vessel's name (Cl. 1) HONG PROSPERITY<br>flag / built / class: ST VINCENT & THE GRENADINES/1981/<br>AMERICAN BUREAU OF SHIPPING<br>NT / GT: 7,529.00 / 13,228.00<br>summer DWT: 19,409.00 | 6. First layday date (Cl. 6) 12 AUGUST 2007<br>Cancelling date (Cl. 6) 20 AUGUST 2007<br>7. Present position / expected ready to load (Cl. 1) |
| 8. Loading port(s) (Cl. 2)<br>1 GSP 1GSB KANDLA<br>a) Always afloat (*)  b) "safely aground" (*) | 9. Advance notices (Cl. 7)<br>at load port to: |
| 10. Discharging port(s) (Cl. 3)<br>1SB EACH 2 GSPS LAGOS, PORT HARCOURT, PORT HARCOURT TO BE THE LATTER ONE<br>a) Always afloat (*)  b) "safely aground" (*) | at discharging port number of days / to: |
| 11. Cargo nature and quantities (Cl. 2)<br>18,500 MT MIN/19,000 MAX IN OWNERS OPTION BAGGED RICE PACKED IN 50 KILO BAGS ONE GRADE STOWING ON BOARD MAXIMUM 5'1<br>ALWAYS PADDY RICE IS NOT ALLOWED TO BE LOADED<br>a) No bags (*)  b) Maximum in bags for stowage (*) 5'1 | 12. Freight rate (Cl. 4)<br>USD 89.50 PER MT NT FIOS BSS 1/2 - ALWAYS FREE DIA AT ALL DISCHARGING PORTS. |
| 13. Freight rate payment (state currency and method of payment, beneficiary and bank account) (Cl. 4)<br>100% PCT FREIGHT PAYABLE LESS COMMISSIONS WITHIN 3 BANKING DAYS FROM SIGNING-RELEASING BILLS OF LADING MARKED FREIGHT PAYABLE AS PER CHARTER PARTY DATED 8 AUGUST 2007 DIRECT TO DISPONENT OWNERS BANK ACCOUNT. DEMURRAGE IF ANY OR LESS DESPATCH AGREED IF ANY PAYABLE 20 DAYS AFTER OF COMPLETION OF DISCHARGING AND PRESENTATION OF ALL RELEVANT DOCUMENTS | 14. Loading rate (Cl. 5)<br>2,500 MT PER WWD SHEX SATURDAY 12:00 CLAUSE TO APPLY EIU<br>15. Discharging rate (Cl. 5)<br>1,000 MT PER WWD SHEX SATURDAY 12:00 CLAUSE TO APPLY<br>16. Demurrage / Despatch money (Cl. 8)<br>USD 9,000 PER DAY PRO RATA HDWTS AT BENDS |
| 17. Agents at loading port(s) (Cl. 13) | 18. Agents at discharging port(s) (Cl. 13) |
| 19. Extra insurance, maximum (Cl. 14)<br>FREE - FOR CHARTERERS ACCOUNT | 20. Brokerage commission and to whom payable (Cl. 15)<br>1.25% ABACUS SHIPPING LTD |
| 21. Address Commission (Cl. 16)<br>2.5% | a) Deductible (*)  b) Non-deductible (*) |
| 22. Numbers of the additional clauses covering special provisions, if any, agreed<br>ADDITIONAL CLAUSES FROM CLAUSE 30 TO CLAUSE 55 ARE DEEMED TO BE INCORPORATED INTO THIS CHARTER PARTY | |

It is mutually agreed that this Charter Party shall be performed subject to the conditions contained herein consisting of PART I and PART II including additional clauses if any agreed and stated in Box 22. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further.

| For the Owners | For the Charterers |
|---|---|
| | |

(*) Delete as appropriate: if no deletion made alternative (a) to apply.
This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

1. **Owners, Charterers**
It is this day agreed between the party designated in Box 3, Owners of the Vessel named and described in Box 5, being now in position and expected ready to load as mentioned in Box 7, and the party designated in Box 4 as Charterers, THAT

2. **Loading Port(s) and Cargo**
The said Vessel being tight, staunch and in every way fit for the voyage, shall with all convenient speed proceed to the place designated in Box 8 1 Safe Berth / safe anchorage Kandla, which in case of named port(s)
Owners acknowledge as safe and suitable for this Vessel and there load always afloat, unless "safely aground" has been specifically agreed in Box 8, in such safe berth, dock, wharf or anchorage as Charterers or their Agents or Shippers may direct a full and complete cargo of wheat and/or maize and/or barley as described in Box 11, in metric tons (5 % more or less in Owners' option) in bulk. Shippers have the option of using a second safe berth. The time for shifting between the two berths shall count as laytime, but shifting expenses shall be for Vessel's account. Owners shall provide and install at their risk and expense and on their time all that is required for safe stowage of grain according to local and international regulations.
The cargo shall not exceed what the Vessel can reasonably stow and carry over and above her bunkers, apparel, stores, provisions and accommodation. The whole cargo shall be carried and stowed under deck in unobstructed main holds. All cargo on board to be delivered.
Furthermore, if stowage bags have been specifically agreed, the following shall apply:
Charterers shall supply for stowage purposes a quantity of bagged cargo not exceeding the quantity specified in Box 11, which shall be stowed at their risk and expense. The number of bags signed for on Bills of Lading to be binding on Vessel and Owners, unless error or fraud be proved.

3. **Discharging Port(s)**
Being so loaded, the Vessel shall proceed with all convenient speed direct to the place designated in Box 10, which in case of named port(s) Owners acknowledge as safe and suitable for this Vessel, and there discharge the cargo always afloat, unless "safely aground" has been specifically agreed in Box 10, in such safe berth, dock, wharf or anchorage as Charterers or their Agents or Receivers may direct. Receivers have the option of using a second safe berth. The time for shifting between the two berths shall count as laytime, but shifting expenses shall be for Vessel's account.

4. **Freight**
The freight agreed under this Charter Party shall be as stated in Box 12, per metric ton on nett Bill of Lading weight and shall be deemed earned as cargo is loaded on board, prepaid discountless and non-returnable, Vessel and/or cargo lost or not lost.
The freight shall be paid as specified in clause 47 Box 13.
All charges and dues levied on the cargo shall be for Charterers' account and those levied on the Vessel howsoever assessed shall be for Owners' account.

5. **Loading and Discharging**
Cargo shall be loaded, spout-trimmed and/or stowed at the risk and expense of Shippers/Charterers at the average rate stated in Box 14. See also Clause 5 weather permitting.
Cargo shall be discharged at the risk and expense of Receivers/Charterers at the average rate stated in Box 15, weather permitting.
Stowage shall be under Master's direction and responsibility. Shippers' and/or Charterers' representatives have the right to be on board the Vessel during loading, discharging or lightering for the purpose of inspecting the cargo and/or weighing. Charterers and Owners are allowed to work overtime, such expenses shall be for account of the party ordering same. If ordered by Port Authorities, overtime shall be for Charterers' account. Overtime services rendered by ship's crew shall be in all cases for Owners' account.

6. **Laydays, Cancelling**
At port of loading laytime shall not count before 08.00 hours on the layday date stated in Box 6 and in any case not before the date notified by the 10 days notice as per Clause 7.
Should the Vessel's notice of readiness not be validly tendered as per Clause 8 before 09.00 hours on the cancelling date stated in Box 6, Charterers shall have the option of cancelling this charter at any time thereafter, but not later than one hour after the notice is validly tendered.

7. **Vessel's Positions, Notices**
Master and/or Owners shall give 10 days and thereafter 5 days notice of Vessel's expected readiness to load to the party designated in Box 9.
Master and/or Owners shall give notice of Vessel's Expected Time of Arrival (ETA) at discharging port as specified in Box 9 (to be advised).
Master and/or Owners shall give the relevant parties prompt advice of any substantial change in Vessel's ETA at loading and at discharging ports.

8. **Laytime**
Vessel's written notice of readiness to load and/or discharge shall be tendered by hand or by any means of telecommunication at the offices of Shippers/Charterers/Receivers or their Agents between 08.00 and 17.00 hours on all days except Saturdays, Sundays and Holidays and between 08.00 hours and 12.00 hours on Saturdays unless a holiday. Such notice of readiness shall be delivered when Vessel is in the loading or discharging berth and in all respects ready to load/discharge. At both ends if the berth is congested/unreachable Master has the right to tender N.O.R from the anchorage even by cable telex fax email and time to count whether in berth or not, whether in port or not, whether free of pratique or not, whether customs cleared or not. At loading port Shippers/
Charterers or their Agents have the privilege to inspect Vessel's holds if it is requested by Charterers, a survey may be carried out in their time and risk to establish vessel's holds and with cover's suitability to load bagged rice and owners to have the right to be represented during such survey by their pet Surveyor, and reject the notice when holds are not clean, dry, odourless and in all respects ready to receive the cargo.
In case of dispute, an independent surveyor shall decide about Vessel's readiness to load, the party in the wrong bearing the costs. In case of disagreement between the two surveyors then an independent surveyor (mutually agreed between Charterers' and the owner pri surveyor) to be appointed whose findings to be binding for both parties. In case of any deficiency, then same to be promptly made good by the Owners and any time lost fro the time of rejection till the time of acceptance not to count as laytime. If the rejection of notice of readiness is
undisputed or confirmed by surveyor the laytime will only start to count after the Vessel has validly tendered again when ready.
Only when the loading and/or discharging berth is unavailable, Master may warrant that the Vessel is in all respects ready and may tender notice of readiness to load and/or discharge from any usual waiting place, whether in port or not, whether in free pratique or not, whether customs cleared or not.
Laytime shall commence at 14.00 hours if notice of readiness to load and/or discharge is validly tendered at or before 12.00 hours and at 08.00 hours on the next working day if notice of readiness is validly tendered after 12.00 hours. Time used before commencement of laytime shall

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTÉRIEUR DES CÉRÉALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. SNCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

not count. Laytime shall not count between 12.00 hours on Saturdays or 17.00 hours on days preceding a holiday and 08.00 hours on the following working day, unless used in which case all time actually used shall count. (124-126)

Any delay caused by ice, floods, quarantine or by cases of force majeure shall not count as laytime unless the Vessel is already on demurrage. Once on demurrage always on demurrage but charter party exceptions always to apply (re gear breakdown, crew and/or officers Strike, failure to pay any disbursements, accounts for owners account, etc. (127-130)

When Master has tendered notice of readiness to load or discharge from a waiting place and Vessel is subsequently found unready in application of the above provisions, laytime or time on demurrage shall not count from the time the Vessel is rejected until the time she is accepted. Additionally, any actual time lost on account of Vessel's obtaining free pratique or customs clearance shall not count as laytime or time on demurrage. (131-137)

At second or subsequent port(s) of loading or discharging, laytime or time on demurrage shall resume counting from Vessel's arrival at loading or discharging berth, if available, or from Vessel's arrival at a usual waiting place, if berth is unavailable. (138-143)

At all ports any time lost shifting from waiting place to berth shall not count as laytime or as time on demurrage. (144-145)

### 9. Demurrage, Despatch Money
Demurrage is payable by Charterers at the rate stated in Box 15 per day of 24 consecutive hours or pro rata. Owners shall pay to Charterers despatch money for laytime saved in loading/discharging at the rate stated in Box 15 per day of 24 consecutive hours or pro rata. (146-151)

### 10. Seaworthy Trim
If ordered to be loaded or discharged at more than one berth and/or port, the Vessel is to be left in seaworthy trim to Master's reasonable satisfaction for the passage between berths and/or ports at Shippers'/Charterers'/Receivers expense, and time used for placing Vessel in seaworthy trim shall count as laytime or time on demurrage. (152-158)

### 11. Fumigation
Charterers have the liberty to fumigate the cargo on board at loading and discharging ports for pests en route at their risk and expense. Charterers are responsible for procuring that Officers and Crew as well as all other persons on board the Vessel during and after the fumigation are not exposed to any health hazards whatsoever. Charterers undertake to pay Owners all necessary expenses incurred because of the fumigation and time lost thereby shall count as laytime or time on demurrage. When fumigation has been effected at loading port and has been certified by proper survey of/by a competent authority, Bills of Lading shall not be claused by Master for reason of insects having been detected in the cargo prior to such fumigation. (159-172)

### 12. Lights and Gear
Whenever required, Vessel shall supply free use of lights as on board but sufficient to carry on night work. (173-174)

Provided described as geared, Vessel, whenever required, shall supply free use of all cargo handling gear on board, in good working order, with the necessary power, and of runners, ropes and slings as on board. Shore hands shall be used to drive the gear, at Shippers/Charterers/Receivers account. Any time actually lost on account of breakdown of Vessel's gear shall not count as laytime or time on demurrage and any stevedore standby time charges incurred thereby shall be for Owners' account. The gear's/crane's breakdown then laytime not to count out always on prorata basis. (175-184)

### 13. Agencies (185)

At loading port, Vessel shall be consigned to the Agents designated in Box 17, see clause 52. (186-187)

At discharging port, Vessel shall be consigned to the Agents designated in Box 18, see clause 52. (188-189)

### 14. Extra Insurance
Extra insurance on cargo due to Vessel's age and/or flag and/or class shall be for Owners' account but limited to the amount specified in Box 19, such extra insurance shall be covered by Charterers (or Owners) account and shall be deducted from settlement of freight. (190-195)

### 15. Brokerage
A brokerage commission as stated in Box 20 on the gross amount of freight, deadfreight and demurrage earned, is due to the party(ies) designated in Box 20 and is deductible from same unless "non-deductible" has been specifically agreed. (196-201)

### 16. Address Commission
An address commission as stated in Box 21 on the gross amount of freight, deadfreight and demurrage earned is due to Charterers and is deductible from freight, deadfreight and demurrage. (202-206)

### 17. ISM Clause
From the date of coming into force of the International Safety Management (ISM) Code in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. (207-216)

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account. (217-220)

### 18. Bills of Lading
The Master is to sign Bills of Lading as presented without prejudice to the terms, conditions and exceptions of this Charter Party. If the Master delegates the signing of Bills of Lading to his Agents, he shall give them authority to do so in writing, copy of which is to be furnished to Charterers. When Bills of Lading marked "Freight prepaid" are required, same shall be released by Owners immediately upon receipt of a telex from Charterers' Bank confirming that freight payable has been irrevocably transferred. (221-230)

### 19. Relet
Charterers have the right to relet all or part of this Charter Party, they remaining responsible for its due fulfilment. (231-233)

### 20. Deviation
Deviation in saving or attempting to save life or property at sea or for bunkering purposes or any other reasonable deviation shall not be deemed an infringement of this Charter Party and the Owners shall not be liable for any loss or damage resulting therefrom. (234-239)

### 21. Lien Clause
The Owners shall have a lien on the cargo for freight, deadfreight, demurrage and average contribution due to them under this Charter Party. (240-243)

### 22. Responsibilities and Immunities
Except as otherwise provided and stipulated in this Charter Party, it is hereby expressly agreed that this Charter Party (244-246)

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expenses as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

## PART II
## "SYNACOMEX 2000" Continent Grain Charterparty

| | |
|---|---|
| shall have effect subject to the provisions of the Hague Rules | 247 |
| contained in the International Convention for the Unification | 248 |
| of certain rules relating to Bills of Lading, dated Brussels | 249 |
| the 25th August 1924, as enacted in the country of shipment. | 250 |
| These rules shall apply to any Bill of Lading issued under | 251 |
| this Charter Party. | 252 |
| When no such enactment is in force in the country of | 253 |
| shipment, the corresponding legislation of the country of | 254 |
| destination shall apply, but in respect of shipments to which | 255 |
| no such enactments are compulsorily applicable, the terms | 256 |
| of the said Convention shall apply. | 257 |
| In trades where the International Brussels Convention 1924 | 258 |
| as amended by the Protocol signed at Brussels on February | 259 |
| 23rd, 1968 - The Hague - Visby Rules - apply compulsorily | 260 |
| the provisions of the respective legislation shall apply. | 261 |
| The Owners shall in no case be responsible for loss of or | 262 |
| damage to cargo howsoever arising prior to loading into | 263 |
| and after discharge from the Vessel. | 264 |
| Save to the extent otherwise in this Charter Party expressly | 265 |
| provided, neither party shall be responsible for any loss or | 266 |
| damage or delay or failure in performance hereunder | 267 |
| resulting from Act of God, war, civil commotion, quarantine, | 268 |
| strikes, lockouts, arrest or restraint of princes, rulers and | 269 |
| peoples or any other event whatsoever, which cannot be | 270 |
| avoided or guarded against. | 271 |

**23. Amended General Ice Clause**

*Port of Loading*

| | |
|---|---|
| a) In the event of the loading port being inaccessible by | 273 |
| reason of ice when Vessel is ready to proceed from her last | 274 |
| port or at any time during the voyage, or on Vessel's arrival | 275 |
| or in case frost sets in after Vessel's arrival, the Master for | 276 |
| fear of being frozen in is at liberty to leave without cargo, | 277 |
| and this Charter Party shall be null and void. | 278 |
| b) If during the loading the Master, for fear of Vessel being | 279 |
| frozen in, deems it advisable to leave, he has liberty to do | 280 |
| so with what cargo he has on board and to proceed to any | 281 |
| other port or ports with option of completing cargo for | 282 |
| Owner's benefit to any port or ports including port of | 283 |
| discharge. Any part cargo thus loaded under this Charter | 284 |
| Party to be forwarded to destination at Vessel's expense | 285 |
| but against payment of freight, provided that no extra | 286 |
| expenses be thereby caused to the Receivers, freight being | 287 |
| paid on quantity delivered (in proportion if lumpsum), all | 288 |
| other conditions as per Charter Party. | 289 |
| c) In case of more than one loading port, and if one or more | 290 |
| of the ports are closed by ice, the Master or Owners to be | 291 |
| at liberty either to load the part cargo at the open port and | 292 |
| fill up elsewhere for their own account as under section b) | 293 |
| or to declare this Charter Party null and void unless | 294 |
| Charterers agree to load full cargo at the open port. | 295 |

*Port of Discharge*

| | |
|---|---|
| a) Should ice prevent Vessel from reaching port of | 297 |
| discharge, Receivers shall have the option of keeping Vessel | 298 |
| waiting until the reopening of navigation and paying | 299 |
| demurrage, or of ordering the Vessel to a safe and | 300 |
| immediately accessible port where she can safely discharge | 301 |
| without risk of detention by ice. Such orders to be given | 302 |
| within 48 hours after Master or Owners have given notice | 303 |
| to Charterers of the impossibility of reaching port of | 304 |
| destination. | 305 |
| b) If during discharging the Master for fear of Vessel being | 306 |
| frozen in deems it advisable to leave, he has liberty to do | 307 |
| so with what cargo he has on board and to proceed to the | 308 |
| nearest accessible port where she can safely discharge. | 309 |
| c) On delivery of the cargo at such port, all conditions of | 310 |
| the Bill of Lading shall apply and Vessel shall receive the | 311 |
| same freight as if she had discharged at the original port of | 312 |
| destination, except that if the distance of the substituted | 313 |
| port exceeds 100 nautical miles, the freight on the cargo | 314 |
| delivered at the substituted port to be increased in | 315 |
| proportion. | 316 |

**24. Amended Centrocon Strike Clause**

| | |
|---|---|
| If the cargo cannot be loaded by reason of Riots, Civil | 318 |
| Commotions or of a Strike or Lock-out of any class of | 319 |
| workmen essential to the loading of the cargo, or by reason | 320 |
| of obstructions or stoppages beyond the control of the | 321 |
| Charterers caused by Riots, Civil Commotions or a Strike | 322 |
| or Lock-out on the Railways, or in the Docks, or other loading | 323 |
| places, or if the cargo cannot be discharged by reason of | 324 |
| Riots, Civil Commotions or of a Strike or Lockout of any | 325 |
| class of workmen essential to the discharge, the time for | 326 |
| loading or discharging, as the case may be, shall not count | 327 |
| during the continuance of such causes, provided that a | 328 |
| Strike or Lock-out of the Shippers' and/or Receivers' men | 329 |
| shall not prevent demurrage accruing if by the use of | 330 |
| reasonable diligence they could have obtained other suitable | 331 |
| labour at rates current before the Strike or Lock-out. | 332 |
| In case of any delay by reason of the before-mentioned | 333 |
| causes, no claim for damages or demurrage shall be made | 334 |
| by the Charterers / Receivers of the cargo, or Owners of | 335 |
| the Vessel. For the purpose, however, of settling despatch | 336 |
| money accounts, any time lost by the Vessel through any | 337 |
| of the above causes shall be counted as time used in loading | 338 |
| or discharging, as the case may be. | 339 |

**25. General Average and New Jason Clause**

| | |
|---|---|
| General average shall be adjusted according to the York- | 341 |
| Antwerp Rules 1994 or any subsequent modification thereof, | 342 |
| but where the adjustment is made in accordance with the | 343 |
| law and practice of the United States of America, the | 344 |
| following Clause shall apply: | 345 |
| "In the event of accident, danger, damage or disaster | 346 |
| before or after the commencement of the voyage, | 347 |
| resulting from any cause whatsoever, whether due to | 348 |
| negligence or not, for which, or for the consequence of | 349 |
| which, the carrier is not responsible, by statute, contract | 350 |
| or otherwise, the goods, shippers, consignees, or owners | 351 |
| of the goods shall contribute with the carrier in general | 352 |
| average to the payment of any sacrifices, losses or | 353 |
| expenses of a general average nature that may be made | 354 |
| or incurred and shall pay salvage and special charges | 355 |
| incurred in respect of the goods. | 356 |
| If a salving ship is owned or operated by the carrier, | 357 |
| salvage shall be paid for as fully as if the said salving | 358 |
| ship or ships belonged to strangers. Such deposit as the | 359 |
| carrier or his Agents may deem sufficient to cover the | 360 |
| estimated contribution of the goods and any salvage and | 361 |
| special charges thereon shall, if required, be made by | 362 |
| the goods, shippers, consignees or owners of the goods | 363 |
| to the carrier before delivery" | 364 |
| and the Charterers shall procure that all Bills of Lading issued | 365 |
| under the Charter Party shall contain the same Clause. | 366 |

**26. Both-to-Blame Collision Clause**

| | |
|---|---|
| If the liability for any collision in which the Vessel is involved | 368 |
| while performing this Charter Party falls to be determined | 369 |
| in accordance with the laws of the United States of America, | 370 |
| the following Clause shall apply: | 371 |
| "If the ship comes into collision with another ship as a result | 372 |
| of the negligence of the other ship and any act, neglect or | 373 |
| default of the master, mariner, pilot or the servants of the | 374 |
| carrier in the navigation or in the management of the ship, | 375 |
| the owners of the goods carried hereunder will indemnify | 376 |
| the carrier against all loss or liability to the other or non- | 377 |
| carrying ship or her owners in so far as such loss or liability | 378 |
| represents loss of or damage to or any claim whatsoever | 379 |

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of the document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

of the owners of the said goods, paid or payable by the 381
other or non-carrying ship or her owners to the owners of 382
the said goods and set off, recouped or recovered by the 383
other or non-carrying ship or her owners as part of their 384
claim against the carrying ship or carrier. 385
The foregoing provisions shall also apply where the 386
Owners, Operators or those in charge of any ship or ships 387
or objects other than, or in addition to, the colliding ships or 388
objects are at fault in respect to a collision or contact". 389
and the Charterers shall procure that all Bills of Lading issued 390
under this Charter Party shall contain the same Clause. 391

27. War risks ("Voywar 1993") 392
a) For the purpose of this Clause, the words: 393
(i) "Owners" shall include the shipowners, bareboat 394
charterers, disponent-owners, managers or other operators 395
who are charged with the management of the Vessel, and 396
the Master; and 397
(ii) "War Risks" shall include any war (whether actual or 398
threatened), act of war, civil war, hostilities, revolution, 399
rebellion, civil commotion, warlike operations, the laying of 400
mines (whether actual or reported), acts of piracy, acts of 401
terrorists, acts of hostility or malicious damage, blockades 402
(whether imposed against all vessels or imposed selectively 403
against vessels of certain flags or ownership, or against 404
certain cargoes or crews or otherwise howsoever), by any 405
person, body, terrorist or political group, or the Government 406
of any state whatsoever, which, in the reasonable judgement 407
of the Master and/or the Owners, may be dangerous or are 408
likely to be or to become dangerous to the Vessel, her cargo, 409
crew or other persons on board the Vessel. 410
b) If at any time before the Vessel commences loading, it 411
appears that, in the reasonable judgement of the Master 412
and/or the Owners, performance of the Charter Party, or 413
any part of it, may expose, or is likely to expose, the Vessel, 414
her cargo, crew or other persons on board the Vessel to 415
War Risks, the Owners may give notice to the Charterers 416
cancelling this Charter Party, or may refuse to perform such 417
part of it as may expose, or may be likely to expose, the 418
Vessel, her cargo, crew or other persons on board the Vessel 419
to War Risks; provided always that if this Charter Party 420
provides that loading or discharging is to take place within a 421
range of ports, and at the port or ports nominated by the 422
Charterers the Vessel, her cargo, crew, or other persons 423
onboard the Vessel may be exposed, or may be likely to be 424
exposed, to War Risks, the Owners shall first require the 425
Charterers to nominate any other safe port which lies within 426
the range for loading or discharging, and may only cancel 427
this Charter Party if the Charterers shall not have nominated 428
such safe port or ports within 48 hours of receipt of notice of 429
such requirement. 430
c) The Owners shall not be required to continue to load 431
cargo for any voyage, or to sign Bills of Lading for any port 432
or place, or to proceed or continue on any voyage, or on 433
any part thereof, or to proceed through any canal or 434
waterway, or to proceed to or remain at any port or place 435
whatsoever, where it appears, either after the loading of 436
the cargo commences, or at any stage of the voyage 437
thereafter before the discharge of the cargo is completed, 438
that, in the reasonable judgement of the Master and/or the 439
Owners, the Vessel, her cargo (or any part thereof), crew 440
or other persons on board the Vessel (or any one or more 441
of them) may be, or are likely to be, exposed to War Risks. 442
If it should so appear, the Owners may by notice request 443
the Charterers to nominate a safe port for the discharge of 444
the cargo or any part thereof, and if within 48 hours of the 445
receipt of such notice, the Charterers shall not have 446
nominated such a port, the Owners may discharge the cargo 447
at any safe port of their choice (including the port of loading) 448
in complete fulfilment of the Charter Party. The Owners shall 449
be entitled to recover from the Charterers the extra expenses 450
of such discharge and, if the discharge takes place at any 451
port other than the loading port, to receive the full freight as 452
though the cargo had been carried to the discharging port 453
and if the extra distance exceeds 100 miles, to additional 454
freight which shall be the same percentage of the freight 455
contracted for as the percentage which the extra distance 456
represents to the distance of the normal and customary 457
route, the Owners having a lien on the cargo for such 458
expenses and freight. 459
d) If at any stage of the voyage after the loading of the 460
cargo commences, it appears that, in the reasonable 461
judgement of the Master and/or the Owners, the Vessel, 462
her cargo, crew or other persons on board the Vessel may 463
be, or are likely to be, exposed to War Risks on any part of 464
the route (including any canal or waterway) which is normally 465
and customarily used in a voyage of the nature contracted 466
for, and there is another longer route to the discharging 467
port, the Owners shall give notice to the Charterers that 468
this route will be taken. In this event the Owners shall be 469
entitled, if the total extra distance exceeds 100 miles, to 470
additional freight which shall be the same percentage of 471
the freight contracted for as the percentage which the extra 472
distance represents to the distance of the normal and 473
customary route. 474
e) The Vessel shall have liberty: 475
(i) to comply with all orders, directions, recommendations 476
or advice as to departure, arrival, routes, sailing in convoy, 477
ports of call, stoppages, destinations, discharge of cargo, 478
delivery or in any way whatsoever which are given by the 479
Government of the Nation under whose flag the Vessel sails, 480
or other Government to whose laws the Owners are subject, 481
or any other Government which so requires, or any body or 482
group acting with the power to compel compliance with their 483
orders or directions; 484
(ii) to comply with the orders, directions or recom- 485
mendations of any war risks underwriters who have the 486
authority to give the same under the terms of the war risks 487
insurance; 488
(iii) to comply with the terms of any resolution of the Security 489
Council of the United Nations, any directives of the European 490
Community, the effective orders of any other Supranational 491
body which has the right to issue and give the same, and 492
with national laws aimed at enforcing the same to which 493
the Owners are subject, and to obey the orders and 494
directions of those who are charged with their enforcement; 495
(iv) to discharge at any other port any cargo or part thereof 496
which may render the Vessel liable to confiscation as a 497
contraband carrier; 498
(v) to call at any other port to change the crew or any part 499
thereof or other persons on board the Vessel when there is 500
reason to believe that they may be subject to internment, 501
imprisonment or other sanctions; 502
(vi) where cargo has not been loaded or has been 503
discharged by the Owners under any provisions of this 504
Clause, to load other cargo for the Owners' own benefit 505
and carry it to any other port or ports whatsoever, whether 506
backwards or forwards or in a contrary direction to the 507
ordinary or customary route. 508
f) If in compliance with any of the provisions of sub-clauses 509
b) to e) of this Clause anything is done or not done, such 510
shall not be deemed to be a deviation, but shall be 511
considered as due fulfilment of the Charter Party. 512

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

**Clause 30**
M/V HONG PROSPERITY

| | |
|---|---|
| Ex name | : National Pride |
| Type | : Multi-purpose Cargo Ship |
| Port of Registry | : KINGSTOWN |
| Class | : American Bureau of Shipping |
| Year Built | : March 1981 |
| Builder | : Hitachi Shipbuilding and Engineering Co., Japan |
| Call Sign | : VRWC5 |
| Inmarsat-C ID No. | : 4477 69410 |
| Sat com. phone | : 762960165 |
| Sat com. fax | : 762960166 |
| DWT Summer | : 19,409.00 mt |
| Gross Tonnage (GT) | : 13,228.00 |
| Net Tonnage (NT) | : 7,529.00 |
| Suez GRT | : 14,109.18 |
| Suez NRT | : 11,118.15 |
| Panama GRT | : 14,902 |
| Panama NRT | : 11,986 |
| LOA | : 163.06 m |
| LBP | : 152.00 m |
| Breadth, mld | : 25.10 m |
| Depth, mld | : 14.10 m |
| Draft summer | : 9.921 m |

Speed about 14.5knots on 26.5 IFO (380 CST) + 2.0 mt MDO
Speed consumption is based on clean and smooth bottom, even keel, deep and currentless water with sea temperature of max. 28 degrees celsius, wind max. Beaufort 3.

Port Consumption :
Idle @ about 1.0 mt IFO 380 CST + about 1.5 mt MDO
Working 24 hours @ about 1.0 mt IFO 380 CST + about 2.5 mt MDO

IFO Tank Capacity : 1,793 M3 @ 100% full
MDO Tank capacity : 261 M3 @100% full
Fuel Grade/ Specs : IFO380cst , RMG35,ISO8217.1996
                    : MDO.DMB.ISO8217.1996

HOLD DIMENSIONS (in meter):
Cargo Hold # 1:

| | Length | Width (fwd) | Width (aft) | Depth (bulkhead) | Depth (hatchway) |
|---|---|---|---|---|---|
| LH | 19.0 | 5.6 | 15.6 | 5.4 | 6.0 |
| TD | 19.0 | 7.0 | 19.7 | 5.4 | 4.0 |

Cargo Hold # 2:

| | Length | Width (fwd) | Width (aft) | Depth (bulkhead) | Depth (hatchway) |
|---|---|---|---|---|---|
| LH | 24.0 | 13.4 | 22.0 | 8.0 | 8.2 |
| TD | 24.0 | 20.0 | 22.6 | 5.4 | 4.0 |

Cargo Hold # 3:

| | Length | Width (fwd) | Width (aft) | Depth (bulkhead) | Depth (hatchway) |
|---|---|---|---|---|---|
| LH | 24.6 | 18.6 | 18.6 | 8.0 | 8.2 |
| TD | 24.6 | 22.6 | 22.6 | 5.4 | 4.0 |

Cargo Hold # 4:

| | Length | Width | Width | Depth | Depth |
|---|---|---|---|---|---|

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

|  | Length | Width (fwd) | Width (aft) | Depth (bulkhead) | Depth (hatchway) |
|---|---|---|---|---|---|
| LH | 24.0 | 18.6 | 18.6 | 8.0 | 8.2 |
| TD | 24.0 | 22.6 | 22.6 | 5.4 | 4.0 |

Cargo Hold # 5:

|  | Length | Width (fwd) | Width (aft) | Depth (bulkhead) | Depth (hatchway) |
|---|---|---|---|---|---|
| LH | 17.4 | 19.6 | 12.4 | 8.0 | 8.2 |
| TD | 17.4 | 22.6 | 22.2 | 5.4 | 4.0 |

(Note- the TD bulkhead height is applicable to the wings only. The height fwd and aft of the tweendeck opening is restricted by the tweendeck hatch cover stoppers)

Number of Decks : 2
Number of Holds : 5
Number of Hatches : 9
    Hold # 1 - Single Hatch, Tweendecker
    Hold # 2 to 5 - Twin Hatches, Tweendecker
    Hold # 4 - Has longitudinal bulkhead on lower hold, Tweendecker
    Hold # 1, 2, 3 & 5 lower holds have supporting pillars amidships

CUBIC CAPACITY:

Total (Grain) : 28,727.00 cu.m
      (Bale)  : 27,470.00 cu.m

Cubic capacity each hold (2nd deck hatch cover closed)

|  | Grain | Bale |
|---|---|---|
| LH # 1 | 1,453 | 1,349 cu.m |
| LH # 2 | 4,406 | 4,239 cu.m |
| LH # 3 | 3,970 | 3,921 cu.m |
| LH # 4 | 3,837 | 3,795 cu.m |
| LH # 5 | 3,172 | 2,957 cu.m |
| TD # 1 | 1,462 | 1,358 cu.m |
| TD # 2 | 2,730 | 2,610 cu.m |
| TD # 3 | 2,839 | 2,703 cu.m |
| TD # 4 | 2,778 | 2,653 cu.m |
| TD # 5 | 2,003 | 1,899 cu.m |

Cubic capacity each hold (2nd deck hatch cover opened)

|  | Grain | Bale |
|---|---|---|
| HOLD # 1 | 2,697 cu.m | -- |
| HOLD # 2 | 6,884 cu.m | -- |
| HOLD # 3 | 6,482 cu.m | -- |
| HOLD # 4 | 6,389 cu.m | -- |
| HOLD # 5 | 4,870 cu.m | -- |

If loading grain in lower holds and tween decks, tween deck covers to be opened with shifting board fitted.

CONTAINER CAPACITY
(Nominal Intake):           210 Teu Deck
                            210 A d20s
                            or
                            50 Ad20s (fixed) + 80 A d40s
- or combination
                            No containers are allowed in Holds

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

Stowage of containers on deck always subject to stability, visibility, permissible stackweights, and at Master's discretion and according to vessel's container lashing and stowage plan.

PERMISSIBLE STACKWEIGHTS:
    DK (2tiers) "C 40 mT for 20;" / 50 mT for 40;"
PERMISSIBLE UNIFORM LOAD:

    LH   - 11.7 mT/ sq.m
    TD   - 3.0 mT/ sq.m
    DK   - 2.0 mT/ sq.m

HATCH SIZES: (Type: Hydraulic "C McGregor Steel Folding Hatch Cover)

| | Length / Breadth |
|---|---|
| Hatch # 1 | 12.8m/A 10.4m / 8.0m/A 1 |
| Hatch # 2 | 19.2m/A 8.0m/A 2 row |
| Hatch # 3 | 19.2m/A 8.0m/A 2 row |
| Hatch # 4 | 19.2m/A 8.0m/A 2 row |
| Hatch # 5 | 12.8m/A 8.0m/A 2 row |

CARGO GEARS: (Type: Electro "C hydraulic Driven Jib Crane)
    Crane Single:   16mT (hold #1, #2 and #5)
        Max. reach 22m @ 25 deg.
        25mT (hold #3 and #4)
        max reach 22m @ 25 deg.
    Double (in tandem):   50mT (hold #3 and #4)
        Max reach 22m @ 25 deg.

MISCELLANEOUS:

| | |
|---|---|
| Battens | : yes |
| CO2 Fitted | : yes |
| Bow Truster | : no |
| Electrical Ventilation | : yes |
| Double Skin | : no |
| Great Lakes Fitted | : no |
| Australian Hold Ladders Fitted | : no |

(ALL DETS TO READ ABT)

### Clause 31

Vessel is suitable for loading of bagged rice which is to be loaded in main holds only.

### Clause 32

Lay time to be reversible between load and discharge ports respectively.

### Clause 33

If second berth used at discharging time to court during shifting expenses to be for Charterers' account. Bunkers and crew is always for Owner's account. It is understood that all port costs relating to the vessel for 2nd berth if used are for Charterers account as fixed free D/A's at both discharging port. All vessel's port disbursements at discharging ports to be fully for Charterers/Receivers account.

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

**Clause 34**

Lightening at loading/discharging port to be for Shippers/Receivers' time and expense. Shippers/Receivers to supply sufficient fenders for lightening operations. All time for lightening operation will continue to count as lay time.

**Clause 35**

At load and discharging port(s) any time occupied is shifting from the place at anchorage or Layberth to loading/discharging (berths) not to count unless is already on demurrage.

**Clause 36**

At load and discharge ports first opening/last closing of hatches to be at Owners' time and expense. If shore regulations do not permit the crew to open/close hatches then Shippers/Receivers to provide shore labour to perform these operations at their expense and time used to count.

**Clause 37**

If required, vessel to give free of derricks and power to drive them gear, runners, ropes and slings, as on board. Shore winchmen to be employed and same to be for Shippers/Receivers account. Vessel to give free use of lights as on board if required for night work. Owners guarantee that the vessel has her four swinging derricks sufficient cranes in good working order and is properly equipped to load/discharge cargo. Should it be found that the vessel is unable to load/discharge owing crane and/or equipment not working properly in loading/discharging port, extra time and/or expenses incurred supported by original vouchers to be for owners account but only in relation to the number of derricks affected.

**Clause 38**

Owners/Master certify the vessel is in all respects capable and agreeable to "in a sea transit fumigation", with approved products such as aluminum phosphine/fostoxin, or any other approved products. However if charts use different materials and local authorities require crew to stay ashore, then all related expenses including victually/transportation/accommodation to be for Charterers account and time to count as laytime.

**Clause 39**

Overtime to be for account of party ordering same, but if ordered by Port Authorities or elevator then same to be for Shippers' / Receivers' account. Officers and crew's overtime always to be for Owners' account.

**Clause 40**

On sailing from loading port Master to telex (to be advised) giving cargo quantity loaded/number of bags/ETA discharging port.

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

**Clause 41**

This fixture to remain private and confidential.

**Clause 42**

In order to protect cargo, Owners to supply and lay at Owners time and expenses bamboo sticks/mats/plastics/kraft paper or equivalent suitable material provided same accepted by port's regulation. Vessel to be clean and suitable to load bagged rice dunnage or craft paper for Owners account as required to Shippers surveyors satisfaction. All materials to be ordered by Owners but laid by Stevedores at their time. The cost of these materials to be for Owners.

**Clause 43**

Both at loading and discharging ports, tally on board to be for Owners account. Shore side tally to be for Shippers respectl'vely Receivers account.

**Clause 44**

Owners to authorize agents to issue clean Bills of Lading in accordance with Mate's receipts. Master to issue clean Mate's receipts and Bills of Lading. Master has the right to reject any damaged/torn cargo bags and Charterers/Shippers to replace same by sound ones at Charterers/Shippers time and account.

**Clause 45**

Owners confirm vessel will sail directly to the discharging ports without any deviation after completion of loading always expecting any deviation en route for bunkering calls or emergencies that may arise.

**Clause 46**

Owners guarantee that vessel has not suffered any General Average in the past 24 months.

**Clause 47**

If required by the Charterers, Owners to discharge cargo without receipt of Original Bills of Lading against Charterers' Letter of Idemnity (no bank countersignature). Letter of Indemnity wording as per usual P and I Club wording. However Charterer undertake to furnish Owners earliest possible with full set of Original Bills of Lading.

**Clause 48 - Freight Payment**

100% of freight payable less 3.75% commission and less despatch, if any at loading port, within 3 Banking Days from and signing and releasing Bills of Lading marked "Freight payable as per C/P".

Demurrage / Despatch to be settleed within 30 days after completion of voyage.

Full freight deemed earned on completion of loading discountless and net returnable vessel and/or cargo lost or not lost.

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

Freight tv be paid into Owners Bank account as follows:

```
BANK         : EGNATIA BANK
ACCOUNT NO:0094975421
SWIFT CODE   : EGNAGR2T
(EGNATIA BANK)
ADDRESS 116 KOLOKOTRONI STREET AND
   11 MERARCHIAS STREET 185 35
   PIRAEUS - GREECE
FAVOUR OF  : BULK MERCHANT CORPORATION S.A.
IBAN NUMBER:GR 7502903010000000094975421
REF    :MV HONG PROSPERITY
CORRESPONDING BANK -
BANK       : AMERICAN EXPRESS BANK LTD
SWIFT ADDRESS : AEIBUS33
```

Clause 49

The Owners represent and warrant that:

1) It is not Owned or controlled by Libya, North Korea, or Iraq.
2) The vessel is not owned or controlled by Libya, Cuba, North Korea or Iraq, it is not registered under the laws thereof and is not Chartered to, or crewed by any nations thereof.

Clause 50 - Arbitration Clause:

Should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three (3) persons in London, one to be appointed by each of the parties hereto and the third by the two chosen; their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be a rule of the court. The Arbitrators shall be commercial men.

This contract is governed by English law.

Clause 51

Owners/Master warrant that they will take all necessary measures and precautions to protect the cargo from rain or other damage caused by failure to close vessel's hatches timely.

Clause 52

Any taxes dues on vessel to be for Owners account

Any taxes/dues/wharf/commissions on cargo to be for Charterers account.

Over Age Premium to be for Charterers account. Indian freight tax to be for Owners account if any.

Clause 53

Owners paying load port disbursements account.

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

At discharging port vessel's D/A to be for Charterers' account and following clause to apply;

At discharging port the Charterers to appoint their nominated Agents and to be responsible for the payment of all disbursement expenses and any other charges incurred for enabling the vessel to use the port and berths for the purposes of discharging the cargo - which include but are not limited to costs such as agency fees, tugs, pilotage charges, port dues, canal costs, light dues, boatage, authoritic. fees, sundries, comms. etc. as well as all taxes a/o dues a/o wharfages a/o peages a/o quay dues a/o berthing taxes, whether all herein stated items are charged on vessel and/or freight and/or cargo, and any other compulsorily charged items, to be for Charterers account. This sum to exclude any normal crews' matters which to be for Owners' account and covered directly by Owners.

Charterers Agents both ends to be advised

Clause 54

Additional clause to apply for Yemen and Nigeria:

In the event of any alleged cargo claims/shortages, Charterers/Receivers are to accept Owners' P and I Club Letter of Guarantee/bond.

Clause 55

If it's requested by Charterers a survey may be carried out at their time and risk and expense to establish vessel's holds and hatch covers suitability to load bagged rice and Owners to have the right to be represented during such survey by their P&I surveyors. In case of disagreement between the two surveyors then an independent surveyor to be appointed whose findings to be binding for both parties. In case of any deficiency, then same to be promptly made good by the Owners and any time lost from the time of rejection till the time of acceptance not to count as lay time.

USA Clause Paramount:

This Bill of Lading shall effect subject to the provisions of the carriage of goods by Sea Act of the United States, approved April 16 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said act, if any term of this Bill of Lading be repugnant to said act to any extent such terms shall be void to that extent, but no further.

P and I Bunker Deviation Clause

This vessel, in addition to all other liberties, shall have the liberty as part of the contract voyage and at any stage thereof to proceed to any port whatsoever, whether such ports are on or off the direct and/or customary route or routes, to the ports of loading or discharge named in the Charter, and there take oil bunkers in any quantity in the direction of the Owners, even to the full capacity of fuel tonics, deep tanks and any other compartment in which oil can be carried, whether such amount is or is not required for the Chartered voyage.

MV HONG PROSPERITY/SUNDERSONS CP DD 08TH AUGUST 2007

Voywar 1950

(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram dispatched to the Charterers, to cancel this Charter.

(3) The Master shall not be required to load cargo or continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith in the latter case the Vessel shall have the liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load and discharge such other cargo at any other port or ports whatsoever, backward, or forward, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause shall in any case be payable on the quantity delivered.

Voywar 1950

(4) If at the time the Master elects to proceed with part or full cargo under Clause 3 or after the Vessel has left the loading port, or the last of the loading ports, if more than one, it appears that further performance of the last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo to war risks, the cargo shall be discharged, or if to discharge has been commenced shall be completed, at any safe port in vicinity of the port of the discharge as may be ordered by Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have dispatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to such discharge the cargo at any safe port which they may in their contract of affreightment in the event of cargo being discharged at any such other port, the Owners shall be emitted to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, deliver or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to same other port) given by any other Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organized body or committee or person having under directions or recommendations. If by reason of or in compliance with any such

MV HONG PROSPERITY/SUNDERSON'S CP DD 08TH AUGUST 2007

direction or recommendation, anything is done or is not done, such shall not be deemed a deviation.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owner) in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfillment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(c) All extra expenses (including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clauses 4 and 5 (b) hereof shall be by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses.

**THE OWNERS:**                                    **THE CHARTERERS:**