BLANK ROME, LLP
Attorneys for Defendants
SUNDERSONS, LTD
SIMRAN MEHER LTD.
CONTI-AGRO NIGERIA LTD.
VALECHHA HOLDINGS LIMITED
Thomas H. Belknap, Jr. (TB-3188)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
tel: (212) 885-5000
fax: (212) 885-5001
tbelknap@blankrome.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JALAPA SHIPPING LIMITED,<br><br>     Plaintiff,<br><br>  -against-<br><br>SUNDERSONS LTD., et al.,<br><br>     Defendants. | 07 Civ. 8715 (RJH) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION TO VACATE ATTACHMENT**

128426.00602/6642370v.1

## **PRELIMINARY STATEMENT**

Defendants Sundersons Ltd, Simran Meher Ltd, Conti-Agro Nigeria Ltd, and Valechha Holdings Limited submit this reply memorandum of law in further support of their motion to vacate all orders of attachment issued as against them in this matter.

## **DISCUSSION**

### A.  **Defendants' Standing**

As a threshold matter, plaintiff contends that defendants lack standing to contest this Court's Order Directing Issuance of Process of Maritime Attachment because they disclaim any interest in the $129,517.51 restrained by HSBC on or about April 8, 2008. This argument is frivolous. Defendants are not contesting the specific attachment.[1] Rather, they are contesting the validity of this Court's underlying order to the extent it allows the plaintiff to attach any property actually belonging to any of the alleged "alter ego defendants" in this case.

In the present case, defendants are severely prejudiced by the mere existence of this Court's order—even if none of their funds are presently under attachment—because that order substantially interferes with their ability to engage in ordinary business transactions. Surely, plaintiff is not contending that the order of attachment is uncontestable until funds are actually attached. If an attachment would be subject to vacatur on grounds, for instance, that the underlying complaint fails to state a *prima facie* maritime claim, then it must logically follow that the order directing such an attachment is itself equally subject to vacatur on these same grounds even if no funds have yet been attached. If this were not the case, then plaintiff would

---

[1] As to the timing of defendants' motion, it is to be noted that defendants put the plaintiff on notice of their intent to contest the order of attachment well before these funds were attached. (See Belknap Aff. Ex. C).

effectively be able to "blockade" the defendant indefinitely solely on the weight of an *ex parte* application and an unsubstantiated complaint. Such a result would violate defendants' due process rights.

### B.     Plaintiff's Burden

The parties do not dispute that there is a lack of uniformity among the cases deciding the question of what is the applicable burden upon a plaintiff who seeks to restrain the funds of a defendant which it alleges to be an alter ego of another defendant. Whether the standard is the minimal "*prima facie*" burden, the heightened "probable cause" burden, or some other standard, however, there can be no legitimate dispute that the complaint must at a minimum plead facts—and not merely conclusory legal allegations—which, assuming they are proven true at a trial, will support the legal remedy sought. Apace Comm., Ltd. v. Burke, 522 F. Supp. 2d 512, 521 (S.D.N.Y. 2007)(noting that "'purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard.'")(quoting In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003)). See also De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996)("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).")(quoting Palda v. General Dynamics Corp., 47 F.3d 872, 875 (7th Cir. 1995)).

In Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the United States Supreme Court revisited the standard of pleading required by Fed. R. Civ. P. 8, holding that, to state a claim, a plaintiff's "factual allegations [if true] must be enough to raise a right to relief above the speculative level," and that there must be "plausible grounds to infer" actionable conduct, *i.e.*, to

raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." Id. at 1965. In particular, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)("on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). See also AD Rendon Communications, Inc. v. Lumina Americas, Inc., 2007 U.S. Dist. LEXIS 75625 (S.D.N.Y. 2007)(if plaintiff "has not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."); Shenango, Inc. v. American Coal Sales Co., 2007 U.S. Dist. LEXIS58110 (W.D. Pa. 2007)("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in Twombly, such averments cannot support a veil-piercing claim.").

The above principles are all the more relevant in a maritime attachment action. As noted in defendants' main brief (Br. 8-9), the Supplemental Admiralty Rules expressly provide for a <u>heightened</u> pleading standard for attachment and arrest actions. See Rule E(2)(a). These heightened requirements are specifically "designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." Dolco Investments, Ltd. v. Moonriver Dev. Ltd., 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007). Moreover, to the extent plaintiff alleges fraud, such allegations are subject to Rule 9(b)'s "particularity" requirement.

A Rule B maritime action, which allows a plaintiff to obtain an *ex parte* order of attachment merely on the basis of the allegations in a complaint, is a fertile ground for abuse. In the ordinary case, a plaintiff can tie up vast sums belonging to a defendant merely on the basis of

unsubstantiated allegations in a complaint, and in most cases it is likely to be months or even years before a valid claim may be separated from a frivolous one. During that time, the defendant's funds languish under attachment in this jurisdiction. Where alter ego allegations are involved, moreover, the contingent nature of the liability is compounded, as the plaintiff must not only prevail on its claim on the merits but must also meet its legal burden of proving the alter ego status of the defendant whose funds it has attached.

Against this background, it is hardly surprising that the Supplemental Admiralty Rules expect plaintiffs to meet a heightened pleading standard, for it is only the complaint which allows the Court any opportunity to distinguish a valid claim from a frivolous one. Given the *ex parte*, pre-judgment nature of the remedy, it would be improper to allow a plaintiff to maintain an attachment in these circumstances on the basis of a few flimsy and conclusory allegations, with little or no factual basis to support them. To do so would violate the defendant's right to due process.

    C.    **Piercing The Corporate Veil**

Plaintiff contends that reliance on the protection of the corporate veil "draws no water where the corporate privilege is used to escape liability and defraud others." (Pl. Br. 7). Of course, other than a passing and conclusory reference to fraud in paragraph 25 of plaintiff's Second Amended Complaint, <u>plaintiffs do not allege fraud</u> on the part of the defendants. Clearly, plaintiff's reference in paragraph 25 falls well short of Rule 9(b)'s "particularity" requirement. In short, the fraud "prong" of the veil piercing analysis is not even in issue in the present case. Instead, plaintiff relies solely on the "alter ego" prong and contends that defendant Milan Nigeria "dominates and disregards its alter ego's form." (Br. 7).

The inadequacy of plaintiff's pleadings in its Second Amended Complaint have been detailed in defendants' main brief at 13-15 and will not be restated here. Plaintiff attempts via the affidavit of Peter Skoufalos to make up for the insufficiencies in the complaint, but plaintiff fails to move the ball any further down the field.

Of course, for present purposes the assumption to be applied is that all of plaintiff's factual allegations are true. Accordingly, although defendants dispute the accuracy of certain of plaintiff's allegations, such objections are reserved for present purposes. Even assuming, however, that all of the <u>factual</u> allegations in the complaint and the Skoufalos affidavit were true (*i.e.*, as opposed to the conclusory statements about the legal effect upon the defendants), it is clear that plaintiff is grasping at straws and that its allegations go no further than mere speculation.

In the first place, all of the allegations about shared offices and overlapping officers, directors and shareholders are, in and of themselves, <u>no</u> basis whatsoever to ignore the corporate forms of these separate corporations in assessing liabilities for the alleged acts of one of those companies. The Second Circuit has made clear that interlocking directorates are a "commonplace circumstance of modern business," which "does not furnish such proof of control as will permit a court to pierce the corporate veil." <u>American Protein Corp. v. AB Volvo</u>, 844 F.2d 56, 60 (2d Cir. 1988). The <u>American Protein</u> court cited with approval the Fifth Circuit's ruling in <u>Berger v. Columbia Broadcasting System</u>, 453 F.2d 991, 995 (5th Cir. 1972), which held that a subsidiary's board completely comprised of employees of the parent was an insufficient basis to pierce the corporate veil.

Equally, allegations of shared office space are merely "superficial indicia of interrelatedness [which] are not dispositive of the question whether one company is an 'alter ego' of another." Coastal States Trading, Inc. v. Zenith Navigation S.A., 446 F. Supp. 330, 334 (S.D.N.Y. 1977)(holding that shared office space and same business telephone number do not prove interrelatedness of businesses).

Trading under a "group" name or sharing brand or service marks or e-mail addresses is also a common feature of modern business practice. The decision in Tripmasters, Inc. v. Hyatt Int'l Corp., 696 F. Supp. 925 (S.D.N.Y. 1988) is instructive, holding that where:

> the New York parent played a key role in the initial financing of the subsidiary over whom jurisdiction was sought, approved major expenditures of the subsidiary, set its price guidelines, determined its dividend, <u>used a common trademark</u>, had several officers on its board, trained its general manager, shared research and development functions and issued a consolidated financial statement …. the relationship falls short of that corporate intimacy which has led New York courts to hold that a subsidiary is a mere department of the parent.

Id. at 937 (emphasis added)(internal quotation marks omitted).

Nothing in the agreements concluding the "Tudor Shipping" and "Cruiser Shipping" matters supports plaintiff's alter ego allegations. It is hardly surprising that in compromising the Tudor Shipping claim Sundersons would have insisted upon dismissal of the claims against all of the defendants, and that agreement specifically stipulates that it was entered "without any admission of liability," so it is disingenuous for plaintiff to suggest otherwise in these proceedings. (See Skoufalos Aff., Ex. B). In the Cruiser case, as the stipulation expressly recites, the funds attached belonged to Milan Nigeria, i.e., the "prime" defendant, and not any of

the alleged alter egos, so the alter ego issue was entirely moot. (See Skoufalos Aff. Ex. D). Thus, these agreements are entirely irrelevant.

Sunderson's name at the header of the M/V HONG PROSPERITY charter party signifies nothing, particularly where it is clear on the face of the document that the charterer was "Conti Agro Nigeria Limited." (See Skoufalos Aff. Ex. G). Equally, e-mails sent from a "milangrp" e-mail address hardly establish that one company is the alter ego of another, particularly where the body of the message specifies that it was sent "for and on behalf of" a particular entity.

In short, all plaintiff has succeeded in doing is to show that the defendants are related business entities, but this is neither controversial nor adequate to support a legal conclusion that any of the defendants Sundersons, Simran, Conti-Agro or Valechha should be liable for the debts and obligations of Milan Nigeria, which is the only party with which plaintiff has a contractual relationship and against whom plaintiff actually has a claim. (See defendants' main brief at 3).

### D. Plaintiff Is Not Entitled Discovery

Defendants' motion attacks plaintiff's Second Amended Complaint as insufficiently pleading an alter ego cause of action. Where the pleadings themselves are under attack, it is premature to consider a request by the plaintiff for discovery on the underlying claims. In any event, defendants have entered a "restricted appearance" for the sole purpose of contesting the order of attachment in this matter, as is explicitly permitted under the Federal Rules. See Supplemental Admiralty Rule E(8). Plaintiff has failed to establish *in personam* jurisdiction to date because it has not served the complaint on the defendants (and, in any event, there would be no basis to assert *in personam* jurisdiction over the defendants even if service were accomplished), and it has not established *quasi in rem* jurisdiction because it has not attached

any property of the defendants.[2]  Accordingly, there is no basis for discovery to be directed at this time.

## CONCLUSION

For the foregoing reasons, defendants Sundersons, Simran, Conti-Agro and Valechha respectfully submit that their motion to vacate the order of attachment as against them should be GRANTED in full and that they should be granted such other and further relief as the Court may deem just and equitable.

Dated:    New York, New York
          June 4, 2008

                                    BLANK ROME LLP
                                    Attorneys for Defendants
                                    SUNDERSONS, LTD
                                    SIMRAN MEHER LTD.
                                    CONTI-AGRO NIGERIA LTD.
                                    VALECHHA HOLDINGS LIMITED

                                    By             /s/
                                        Thomas H. Belknap, Jr. (TB-3188)
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, NY  10174-0208
                                        Tel.:  (212) 885-5000
                                        Fax:  (212) 885-5001
                                        tbelknap@blankrome.com

---

[2] As noted above, the $129,517.51 restrained by HSBC on April 8, 2008 in the name of "Sundersons" does not belong to defendant Sundersons.  No other funds have been attached.